### LYTH et al. v. HINGSTON et al.

(Supreme Court, Appellate Division, Fourth Department. February 9, 1897.)

1. ACTION—WHO MAY SUE—PERSONS NOT PARTIES TO CONTRACT.
    Persons furnishing labor and material to a city contractor cannot sue on a bond given by him to the city, conditioned on his payment of all bills for labor and materials used in performing the contract, unless there was an intent on the part of the city to take the bond for their benefit, and an obligation of the city to them which would create a privity of interest.

2. MUNICIPAL CORPORATIONS—CHARTER POWERS—CONTRACTOR'S BOND.
    A city is not authorized to require contractors to give bonds to pay for labor and material used in performing the contract, by a charter provision that the city may make such regulations, not inconsistent with the law of the state, as it may deem expedient for the good government of the city, since

the requirement of such bond is inconsistent with the common law of the state that third persons cannot sue on a bond taken for their benefit unless there is privity of interest between them and the obligee.  ·

Appeal from trial term, Erie county.

Action by Alfred Lyth and others against John MacGregor, Edward Hingston, and another. From a judgment entered on a decision of the trial judge in favor of defendant Hingston, plaintiffs appeal. Affirmed.

Upon the 31st day of March, 1891, the defendant John MacGregor entered into a contract with the city of Buffalo to construct a sewer in Stanislaus street, in that city, for the sum of $979. Concurrently therewith, MacGregor, as principal, and his co-defendants, Hingston and Reading, as sureties, executed a bond, in the penal sum of $490, to the city of Buffalo, for the faithful performance of such contract; and at the same time MacGregor, as principal, and the other defendants, as sureties, also executed another bond to the city of Buffalo, in the penal sum of $490, which contained the following provision, viz.: "The condition of this obligation is such that if the above-bounden John MacGregor, his heirs, executors, or administrators, or any of them, shall well and truly pay, or cause to be paid, in full, the wages stipulated and agreed to be paid to each and every person employed by him to perform any labor or services, by the said John MacGregor above named, or his agent or agents, in the construction of a 10, 12, 15, and 18 inch tile sewer in Stanislaus street, etc., etc., as specified in a certain contract made between the said John MacGregor and the city of Buffalo, hereunto annexed, as often as once in each two weeks during the progress of said work, and shall pay, when the same shall become due, the price of all material provided or used in the performance of said work, pursuant to the provisions of a resolution of the common council of the city of Buffalo adopted the 31st day of March, 1869, then this obligation shall cease, otherwise be and remain in full force and virtue." "And in case the said John MacGregor shall fail to pay each and every of the persons employed to perform labor or services aforesaid, or to whom anything shall be due for material provided or used in the performance of said work, as herein above provided, then each and every of said persons to whom the aforesaid John MacGregor shall be then indebted may bring an action on this instrument, in his or her name, for the recovery of the amount of such indebtedness, in the same manner as if such person was a party named in this instrument." After the execution of this second bond the contractor commenced work upon the sewer in question, and the same was completed on or about the 10th day of June following. Between April 1 and May 15, 1891, the plaintiffs sold and delivered to MacGregor sewer pipe, tile, and cement, which were used in the construction of such sewer, and were of the value of $400.63. On September 22, 1891, the plaintiffs rendered a statement to MacGregor of his indebtedness for the materials furnished by them upon this and other contracts which he had with the city, which statement showed that there was then owing the plaintiffs a balance of $1,273.23. For this balance the plaintiffs took MacGregor's note, which was given for three months, and bore interest. This was renewed from time to time, but has never been paid in full; and this action is brought upon the second of the above-mentioned bonds to recover the sum of $400.63, the amount claimed to be due from MacGregor for materials furnished for the Stanislaus street sewer. Such additional facts as are material will be found in the opinion which follows.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

William L. Jones, for appellants.

H. B. Loveland, for respondent.

ADAMS, J. The plaintiffs seek to maintain this action upon the theory that although not parties to the bond upon which their action is founded, nor privy to its consideration, they may neverthe-

less avail themselves of the indemnity which it assumes to furnish to parties who supplied labor and materials used in the performance of a contract entered into by the principal obligor with the city of Buffalo. The case of Lawrence v. Fox, 20 N. Y. 268, and other kindred cases of a later date, are cited by the learned counsel for the plaintiffs, and it is claimed that they furnish ample authority to support the proposition thus stated. There are few reported cases which have been cited with more inaptitude than this oft-discussed and much-misconstrued case of Lawrence v. Fox; and, whatever legal principle it may establish, it certainly is not, in our opinion, authority for the one here contended for, which is, in effect, that a third person, who is not a party to an obligation similar to the one in suit, may maintain an action thereon, in the absence of any liability due, or to grow due, upon such obligation, from the party to whom the promise was made. In the case of Townsend v. Rackham, 143 N. Y. 516–522, 38 N. E. 731, Judge Peckham, with his accustomed perspicuity and terseness, reviewed and analyzed Lawrence v. Fox, and other related cases; and in his opinion he takes occasion to say that in none of them is there an intimation of the doctrine sought to be applied to this case, but that, on the contrary, an action like the present one cannot ordinarily be maintained by a third party, in the absence of some liability to him on the part of the promisee. See, also, Carrier v. Paper Co., 73 Hun, 287, 26 N. Y. Supp. 414. It must therefore be regarded as the settled law of this case that, before the plaintiffs can avail themselves of any indemnity which the bond in suit assumes to afford, they must show (1) an intent upon the part of the promisee to secure to them such benefit; and (2) some privity between the two,— the promisee and the party benefited,—and some obligation or duty owing from the former to the latter, which would give them a legal or equitable claim to the benefit of the promise. Vrooman v. Turner, 69 N. Y. 280. So far as the question of intent is concerned, there is ample evidence in the record to show that one of the objects which the city of Buffalo must have had in view in requiring the defendant MacGregor to execute the bond in suit was to secure those who might render him service or furnish him materials with which to perform his contract; for the city was under no obligation to pay them, nor would it have suffered any loss or harm had resort been had to what is known as the "Municipal Lien Law" (Laws 1878, c. 315, § 1). But, as has been shown, intent is but one of the elements which must be present in this case; and, by itself, it is not sufficient to establish a cause of action, unless there exists also some privity of contract between the plaintiffs and the city. French v. Vix, 143 N. Y. 90, 37 N. E. 612. The rule to which reference has just been made as having been settled by the more recent decisions is one which is very general in its application, but it is nevertheless one which is subject to legislative interference, provided the intent upon the part of the legislature to interfere is made plain and explicit. An illustration of this right of interference with the common law respecting the very question under consideration is furnished by some of the city

charters of this state, and notably that of the city of Lockport, which, in express language, creates a right of action upon contractors' bonds in favor of laborers and material men, although they may not be parties thereto. And it was held by the late general term of the Fifth department, in a case arising under that charter, that an action like the one now under consideration may be maintained. Wilson v. Whitmore, 92 Hun, 466, 36 N. Y. Supp. 550. We do not find, however, nor is it claimed, that any such provision has been incorporated into the Buffalo charter; but, in lieu thereof, our attention is directed to an ordinance or resolution adopted by the common council of that city which reads as follows:

"That the common council will hereafter require any person entering into any contract with the city of Buffalo, which requires the employment of labor or the use of materials, to give in addition to the usual bond for the faithful performance of the contract a bond with sufficient sureties conditioned that the said contractor shall pay all labor and materials used in the performance of said contract, and that all advertisements for proposals shall state that such a bond will be required."

This, it is insisted, is equivalent to an organic provision of the same import; and it becomes important, therefore, to determine whether or not this contention is well founded. The city of Buffalo, being a municipal corporation, derives all its powers from the legislature of the state, and:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto." Dill. Mun. Corp. (4th Ed.) § 89.

See, also, Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480.

In support of the principle enunciated in the foregoing citation, the learned author quotes the late Chief Justice Shaw, who, speaking of municipal and public corporations, says:

"They can exercise no powers but those conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the accomplishment of the purposes of their association. This principle is derived from the nature of corporations, the mode in which they are organized, and in which their affairs must be conducted." Spaulding v. City of Lowell, 23 Pick. 71, 74.

One of the powers which may fairly be regarded as incidental to those which are expressly granted, undoubtedly, is that of adopting suitable and proper ordinances for the regulation and operation of the municipality. These ordinances, however, must be reasonable and lawful, and they can neither enlarge, diminish, nor vary the powers of the charter from which municipal existence is derived. Dill. Mun. Corp. § 317. This last proposition is one which is almost self-evident; for, if the municipality can create, extend,

and define its powers by mere resolution, what need is there of any organic law? But the plaintiffs, if their attitude toward this feature of the case is correctly apprehended, claim that the city of Buffalo was duly authorized to enact this particular ordinance, and in support of that claim cite section 9 of title 3 of its charter, which reads as follows:

"The common council shall * * * have power * * * to make such ordinances and regulations as are not inconsistent with the laws of the state, and which they shall deem expedient for the good government of the city, * * * and the benefit of the trade and commerce; * * * and such other ordinances and regulations as may be necessary to carry into effect the power given to said council by this act; and, for these purposes, are hereby particularly authorized to enact ordinances." Laws 1853, p. 459.

This provision, as we view it, confers no additional power upon the governing council of the municipality; for it simply permits the adoption of such ordinances and regulations as are not inconsistent with the laws of the state, and such as are necessary to carry into effect the powers given by the charter, which is nothing more than the grant of a right or privilege incidental to the charter itself, and one which may be exercised, within proper limitations, without any express authority. Dill. Mun. Corp. § 315. The difficulty with the ordinance relied upon by the plaintiffs is that it is, in its terms, inconsistent with the law of the state, as we understand and have endeavored to state it, in so far as it has any relation to a bond given in pursuance of statutory authority; and therefore, to give to it the force necessary in order to sustain the plaintiffs' contention, we must assume that it was the intention of the legislature to authorize this municipality to adopt ordinances which should be superior to the common law of the state upon the particular subject we have been considering, and such an assumption cannot be indulged in without doing violence to well-established canons of construction. Dill. Mun. Corp. §§ 317, 319, and cases cited in notes.

But there is another obstacle to the plaintiffs' recovery in this action, which, to our mind, is fraught with quite as much difficulty as the one already stated. The liability of the defendants, other than the principal obligor, was that of sureties upon a bond which contained this condition, viz.:

"But if the above-bounden John MacGregor, his heirs," etc., "shall well and truly pay," etc., "and shall pay when the same shall become due, the price of all materials provided or used in the performance of said work pursuant to the provisions of a resolution," etc., "then this obligation shall cease, otherwise be and remain in full force and virtue."

From this it will be seen that the limit of the sureties' undertaking was that their principal should pay the price of all materials purchased by him, when "the same shall become due." Now, it appears by evidence which is uncontroverted that the materials supplied by the plaintiffs were all furnished prior to June 10, 1891. One of the plaintiffs testified that the account for such materials became due and payable on that day, and that payment could properly have been demanded therefor at any time thereafter. It fur-

43 N.Y.S.—42

ther appears that the plaintiffs had other claims against MacGregor, which, with the one in question, amounted in the aggregate to $1,273.23, and that on the 26th of September, 1891, they took Mac-Gregor's note for this sum "in payment" for the amount owing by him. This note matured in three months, with interest, and it was renewed from time to time until it was separated into two notes to cover some additional indebtedness; and these notes were not only negotiable, but they were actually negotiated for the accommodation of the plaintiffs. Inasmuch as the plaintiffs say that their account was due on the 10th day of June, 1891, and, in their complaint, demand interest from May 15, 1891, the giving of these notes must, we think, be regarded as an extension of time to the principal debtor, notwithstanding the claim which is now urged, that they were given in pursuance of an agreement to carry him along until he could realize from the city on his contract. It follows, therefore, that, if such was their effect, they operated to release the sureties from whatever obligation they were under by reason of having joined in the execution of the bond, they not having assented to such extension. Gahn v. Niemcewicz's Ex'rs, 11 Wend. 312; Dunham v. Countryman, 66 Barb. 268; Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328; McNulty v. Hurd, 18 Hun, 1; Powers v. Silberstein, 108 N. Y. 169, 15 N. E. 185.

We have examined the several exceptions to the admission of evidence which are noted upon the brief of the appellants' counsel, without finding any which appear to present reversible error. We conclude, therefore, that the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

FOLLETT and GREEN, JJ., concur. HARDIN, P. J., concurs in result. WARD, J., not voting.