## CITY OF ROCHESTER v. WEST.

(Supreme Court, Appellate Division, Fourth Department. May 7, 1898.)

1. ORDINANCE—REGULATION OF BILL-BOARDS—VALIDITY.

A city ordinance provided that no person should erect any bill-board more than six feet in height without permission of the common council, and that no application for such permission should be considered without verified proof of the giving of one week's notice in writing of such application to the owners, occupants, or agents of all houses and lots, within 200 feet of where such bill-board is to be erected, or their written consent to its erection. *Held,*

that such ordinance was valid as a proper exercise of the police power of the city, and that a conviction for its violation would be sustained.

2. SAME—BILL-POSTING.

Rochester City Charter, § 40, subd. 21, gives the city the right to "license and regulate" bill-posting, and prescribes the "terms and conditions" upon which such licenses shall be granted. *Held*, that this section gave the city the power to prescribe, by ordinance, the method by which this form of advertising should be accomplished, and that the right "to regulate" a business includes the right to prescribe the means by which it shall be conducted.

Appeal from Monroe county court.

Robert West was convicted of violating a city ordinance regulating bill-posting in the city of Rochester, and appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John R. Fanning, for appellant.
Edward R. Foreman, for respondent.

ADAMS, J. The defendant, who is the local manager of the Rochester Bill-Posting Company, was upon the 4th day of June, 1897, convicted in the police court of the city of Rochester of a violation of an ordinance of that city relating to bill-posting and bill-boards. This conviction was subsequently affirmed by the county court of Monroe county, and from the judgment of affirmance the defendant brings this appeal.

The ordinance above referred to was adopted by the common council upon the 22d day of December, 1896, and among its provisions are the following, viz.:

"(1) No person shall carry on the business of bill-posting, bill-distributing, or sign-advertising within the city of Rochester without having procured a license as required by the terms of this ordinance."

"(8) No person shall hereafter erect any bill-board more than six feet in height within the city of Rochester without permission of the common council. Every applicant for permission to erect a bill-board more than six feet in height within said city is required to give one week's notice in writing, personally or by mail, of such application, to the owners, occupants, or agents of all houses and lots within a distance of two hundred feet from where such bill-board is to be erected. No such application shall be considered by the common council without verified proof of the service of the notice herein described, or the written consent of such owners, occupants, or agents to the erection of said bill-board."

It was conceded upon the trial that the bill-posting company was duly licensed to carry on the business of bill-posting in the city of Rochester, and that in the conduct of its business the defendant did upon the 26th day of April, 1897, and while the above-mentioned ordinance was in force, erect upon premises leased by the company upon Lake avenue, in that city, a bill-board more than six feet in height, without permission of the common council, and without having made any application therefor, as required by section 8 of the ordinance in question. It was also conceded that the structure thus erected was substantially constructed of new materials, and that on the 26th day of April, 1897, it was used by the defendant as a bill-board, without his having either applied for or obtained the necessary consent of the local authorities. It is perfectly ap-

parent, therefore, that the defendant was properly convicted of the offense charged against him, and that the judgment appealed from must stand provided the ordinance which the defendant admits he has violated is one which may be lawfully enforced by the municipality which enacted it.

In considering the question which is here presented, it is to be noted that the business in which the defendant, as the agent of the bill-posting company, was engaged, is in itself perfectly lawful. Moreover, it appears that the company has leased premises, and expended money in the erection of the structure thereon, to facilitate the conduct of its business; and it necessarily follows that, if the ordinance in question were to be enforced, it would operate as a restraint upon and an interference with the company's business and property to an extent which can only find justification in the fact that such enforcement was a reasonable exercise of the police power of the municipality. An attempt to define the term "police power" either accurately or satisfactorily is sometimes attended with no little difficulty, and it has been said by a learned jurist that "it is much easier to perceive and realize the existence and sources of the power than to mark its limitations or prescribe limits to its exercise." Chief Justice Shaw, in Com. v. Alger, 7 Cush. 84. Generally speaking, however, it may be characterized as a power which inheres in the state, and in each political division thereof, to protect, by such restraints and regulations as are reasonable and proper, the lives, health, comfort, and property of its citizens. It constituted an essential feature of some of the enactments of the Twelve Tables, and it has for ages been adopted and enforced by all civilized nations as a cardinal rule of the civil law. What is a reasonable exercise of this power often depends upon the circumstances existing at the time it is called into operation; but in every case the fundamental principle upon which it rests is expressed by the maxim, "Salus populi suprema lex est;" and its only limitation is that it "must have reference to the comfort, the safety, or the welfare of society, and it must not be in conflict with the provisions of the constitution." Potter, Dwar. p. 458; People v. Budd, 117 N. Y. 1–28, 22 N. E. 670, 682; In re Jacobs, 98 N. Y. 108.

The question, therefore, with which we are immediately concerned, is: Does the ordinance which the defendant has violated contemplate the exercise of the police power of this particular municipality to an extent beyond that which may be regarded as reasonable? It is a fact so patent that judicial notice may fairly be taken of its existence that the modern system of advertising by posters is such that one can hardly pass along the streets of any large town without being compelled to gaze upon advertisements which are enormous in size, and not infrequently offensive in their character. It is true that there is nothing in the record before us to indicate that the defendant or his company ever made any improper use of this particular bill-board; but the mere fact that it is liable to be so used would seem to afford sufficient reason why, in the interests of decency and morality, the police power of the city might very properly be exerted to restrain and regulate the business

of bill-posting in some such manner as is provided by the ordinance we are considering. But bill-boards of the size and description of those which the defendant claims the right to erect are more than an annoyance to the people who reside near them. They are likewise a constant menace to the lives and limbs of those who are obliged to pass along in front of them; for it is obvious that, if the municipality has no right to place any restriction upon the size and character of such structures, one might be erected of such dimensions as would render it liable to succumb to a violent gust of wind, and fall upon and kill or injure the passers-by. Many cases might be cited where the exercise of the police power as a restraining influence in behalf of the health and safety of a community has been held to be entirely proper; such, for instance, as the storing of gunpowder and other combustible materials in remote and isolated places, the nonerection of wooden buildings within specified fire limits, or the exclusion of slaughter houses from certain portions of a city. But the reason for its exercise in this particular case is so manifest that the citation of authorities in support of the validity of the plaintiff's ordinance seems to be unnecessary. We have not overlooked the cases to which our attention has been directed by the brief of the learned counsel for the defendant; but, after a careful examination of the same, we are unable to discover that they have any application to the facts of this case, for they were either decided to meet exceptional and well-known local conditions, or else they were adjudications which were affected by circumstances which are not here present.

There is, however, one contention upon the part of the defendant which should not be permitted to pass unnoticed, and that is that the ordinance we are considering is not authorized by the plaintiff's charter. It is undoubtedly the rule that a municipal corporation cannot accomplish by ordinance that which is not permitted by its charter; and, consequently, if this particular ordinance is, as the defendant claims, without organic sanction, it must be regarded as ultra vires and void. Lyth v. Hingston, 14 App. Div. 11, 43 N. Y. Supp. 653. But, by reference to subdivision 21 of section 40 of the present city charter, it will be seen that among the general powers conferred upon the plaintiff's common council is that of licensing and regulating bill-posting, bill-distributing, and sign-advertising, and prescribing the terms and conditions upon which any such license shall be granted. Laws 1894, c. 28, § 9. It is insisted, however, that, while the charter does confer upon the legislative branch of the city government the right to license and regulate bill-posting, it does not confer upon it the power to determine the size and character of the contrivances or appliances by means of which this method of advertising may be accomplished. We think there are two complete and obvious answers to this proposition, one of which is that the charter expressly provides that the common council shall prescribe the terms and conditions upon which the license shall be granted; and that is precisely what the ordinance in question is designed to accomplish, for it first declares that no person shall carry on the business of bill-posting, etc., without having ob-

tained a license, and then it provides the "terms and conditions" upon which the right to erect certain structures and appliances for the carrying on of the business shall be granted. But, even if the power thus expressly conferred were eliminated from the charter, we think the right to regulate the business includes the right to prescribe the means by which it shall be conducted. The Century Dictionary defines the verb "regulate" to mean "to govern by or subject to certain rules or restrictions"; and it was said in a case where the right to control the business of slaughtering animals was involved that "to regulate implies a power of restriction and restraint," which relates not only to the manner of conducting a specified business, but also to the erection of the building in which it is conducted. Cronin v. People, 82 N. Y. 318. But, without prolonging the discussion, it is only necessary to add, by way of summary, that the ordinance in question is, in our opinion, a perfectly valid one, and that the power which it authorizes was not improperly or unreasonably exercised in this instance. The judgment appealed from should therefore be affirmed.

Judgment affirmed. All concur.