Harriot. He therefore has put it out of his power to raise any question as to the propriety of that order. The court had jurisdiction of the subject-matter of the action, and when Lieberman, who was a resident of the city of New York, consented to be made a defendant, he submitted himself to the jurisdiction of the court, and he is not now at liberty to complain that the court had no jurisdiction to render judgment against him in a proper case. The question then whether he was properly made a defendant is not before us for decision.

But the complaint alleged that the cause of action originally belonged to one Frank, and had been assigned to the plaintiff on the 17th of June, 1899. That allegation was especially denied by the answer, which also denied other allegations necessary to the plaintiff's recovery. Upon that state of the pleadings, it is clear that the plaintiff could not recover until he had proved the controverted facts which were essential to entitle him to a judgment. None of those were proved, and therefore it was error for the court to direct judgment upon the pleadings, as was done by the municipal court justice. It is quite true that there appears among the papers in the case what is said by counsel to be an assignment from Frank to the plaintiff, but that assignment was not proved upon the trial, and was not produced in evidence; and, if it had been, the defendant, having denied it, had a right to show that it was not executed or not delivered. This opportunity he was refused; the court saying that it had no jurisdiction to pass upon the questions raised by the defendant, and therefore ordered a verdict for the plaintiff. It is rather a peculiar state of affairs, that the court had jurisdiction to assume as true all the allegations of the complaint, although controverted in the answer, but no jurisdiction to take the defendant's proof to overthrow them. It is clear that Lieberman, having denied those allegations of the complaint, should not have had judgment entered against him until they had been proved, and evidence had been given to establish the facts, and he should have been permitted to give such proof as he had to overthrow the plaintiff's case. For the error in denying him that right the judgment was properly reversed, and to that extent the determination of the appellate term must be affirmed; but, as the municipal court had jurisdiction to hear the case, the matter should be sent back to it for a new trial, with costs to the appellant to abide the event. All concur.

<hr>

## CITY OF YONKERS v. YONKERS R. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. MUNICIPAL CORPORATIONS—POWERS—CHARTER AND STATUTORY PROVISIONS—CONSTRUCTION.

Railroad Law, § 98, as amended by Laws 1892, c. 676, authorizing any city to make such reasonable regulations as to "mode of use of tracks as the interest or convenience of the public may require," and a city charter giving the city council power "to secure and promote the public health and safety; to determine public nuisances and to prevent the same,"—confer no power on the city to adopt an ordinance prohibiting the running of street cars without vestibules during the winter months.

**2. SAME—POLICE POWERS.**

The adoption of an ordinance prohibiting the running of street cars without vestibules during the winter months is not a valid exercise of the inherent police power of a city, however reasonable such ordinance may be.

Appeal from special term, Westchester county.

Action by the city of Yonkers against the Yonkers Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

John F. Brennan, for appellant.

James M. Hunt, for respondent.

HIRSCHBERG, J. In this action the plaintiff has recovered judgment for 12 penalties, of $50 each, by reason of the defendant's violation of a city ordinance which prohibits the running of any street cars in the city of Yonkers during the winter months "unless said car shall have a vestibule built upon each end thereof sufficient to afford protection from the weather to motormen, conductors and others' standing upon the platforms of said car." The appeal presents the question whether the legislature has conferred upon the municipal government the power to pass the ordinance. No such power is expressly conferred by the charter, and, apparently realizing that some legislative authority was required, the common council, after passing the ordinance, had a bill prepared and introduced in the senate conferring the power on them, which bill, however, failed of passage. The learned counsel for the city cites the usual general clause contained in the charter, as follows:

"The common council shall have the power to do all acts necessary for the carrying into effect any resolution, ordinance or other proceeding, which it is authorized to adopt, and for that purpose to make, publish, ordain, amend and repeal ordinances, by-laws, resolutions and regulations not contrary to any law of this state, and to enforce observance thereof by imposing penalties on every person or corporation violating the same, not exceeding in any one case of violation one hundred dollars, to be recovered with costs in a civil action in the city court of Yonkers, or in any court of competent jurisdiction."

This clause adds nothing to the express legislative powers conferred by the charter, excepting to authorize the exaction of penalties for the violation of an ordinance which the common council may have the right to pass. It does not purport to enlarge the scope of the common council's legislative power, and the right to pass ordinances for the purpose of enforcing and carrying out the powers expressly conferred would probably exist without it. Dill. Mun. Corp. § 315. The powers of municipal corporations are limited to the express provisions of the charter, and those necessarily incident to the powers granted, or essential to the purposes of the corporate existence. In case of fair and reasonable doubt, the question is generally resolved by the courts against the municipality, and the power denied. Lyth v. Hingston, 14 App. Div. 11, 43 N. Y. Supp. 653, and cases cited. If, therefore, the power exists in the common council of the city of Yonkers to pass the ordinance in

question, it must be found in some act of the legislature other than the city charter.

It is claimed that section 98 of the railroad law, as amended by chapter 676 of the Laws of 1892, confers the power. That section authorizes the common council of any city in the state to "make such reasonable regulations and ordinances as to the rate of speed, mode of use of tracks, and removal of ice and snow, as the interests or convenience of the public may require." It is a sufficient answer to this suggestion to say that the ordinance has no relation whatever to the mode of the use of the railroad tracks. The act relates to the preservation of the interests and convenience of the public in the use of the streets and tracks as such, and the regulations, to be lawful, must be directed to matters connected with the construction and operation of the cars, which in some manner involves and affects the streets and tracks and their use. This the vestibules would not do, directly or indirectly.

The learned counsel for the city further invokes the provision of the charter which confers power on the common council "to secure and promote the public health and safety; to determine public nuisances, and to prevent, restrain, remove and abate the same." This suggestion deserves no serious consideration. So far as any evidence appears in the case, it preponderates in the direction indicating that the vestibules would be more of a menace than a protection to health and safety. The ordinance, however, was not passed in the exercise of the power conferred by the section quoted, nor does its subject-matter relate even remotely to the abuses aimed at. Neither can it be upheld as a valid exercise of the police power. However reasonable it may be in itself, it is to be condemned as an exercise of a power not inherent to municipal existence, an interference with the affairs of the defendant, which the legislature has failed and apparently refused to authorize, and the assertion of a right on the part of the plaintiff which it did not, so far as appears, reserve to itself, as a condition of the consent to the use of its streets by the defendant.

The judgment should be reversed, and the complaint dismissed, with costs. All concur.