BUFFALO FORGE COMPANY, Plaintiff, *v.* FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant.

Supreme Court, Erie County, February 5, 1932.

*Morey & Schlenker* [*E. C. Schlenker* and *A. C. Minahan* of counsel], for the plaintiff.

*Rann, Vaughan, Brown & Sturtevant* [*Franklin R. Brown* of counsel], for the defendant.

MACGREGOR, J. This case was tried before the court and a jury at the January term of this court. At the conclusion of the trial it was stipulated between the counsel that the jury might be discharged; that the issues be submitted to the court and that the court might direct a verdict in the absence of the jury with the same force and effect as though the jury were present.

The action is brought by the plaintiff to recover from the defendant the sum of $2,428.96, the contract price of materials sold and delivered by the plaintiff to the Kentucky Plumbing and Heating Company. The latter company entered into a contract with the board of education of the city of Louisville, Ky., for the installation of a heating and ventilating system in connection with the building of a high school in that city. The contract between the board and the plumbing company required the plumbing company to furnish a bond conditioned for the faithful performance of the contract. In accordance with such contract a bond was written by the defendant.

The contract provided: " and said contractor will promptly pay for all labor performed and all material used or furnished in completing said work and carrying out this contract."

The bond provided: " which said contract dated the 20th day of September 1926 is attached hereto and made a part hereof;" also, " Now said principal shall well and truly keep and perform all and

each of the terms, conditions and agreements of said contract required therein to be kept and performed by said principal, then this obligation to be void, otherwise to remain in full force and effect."

On or about the 11th day of November, 1926, the plumbing company entered into a contract with the plaintiff for the purchase of the materials, the payment for which is the basis for this action. The terms of payment were forty-five days' trade acceptance or net cash thirty days or one per cent discount for each in ten days. It appears that these terms were the ordinary and customary terms in the trade. The plaintiff billed the plumbing company on April 15, 1927, accompanied with a trade acceptance which was accepted by the plumbing company on April 16, 1927. The trade acceptance, with indorsements, was as follows:

" TRADE ACCEPTANCE.

" No. A. 39910–13            $2428.96

" On May 31st, 1927 Pay to the order of ourselves Twenty-four Hundred twenty-eight and 96/100

" The obligation of the acceptor of this bill arises out of the purchase of goods from the drawer.

" The drawee may accept this bill payable at any bank, banker or trust company which he may designate.

" BUFFALO FORGE COMPANY,<br>" By C. S. SCHAFFER, <em>Cashier.</em>

" Accepted 4/16/1927     To Kentucky Plbg.
Payable at Liberty Ins.    & Heating Co.
Bank Lou. Ky.       Louisville, Ky.
Ky. Plbg. & Htg. Co.
By J. L. Seat, Pres.

" Covering invoice
Date Invoice
4–15 2428.96 "

It bore upon its face the following: " The making of this acceptance shall not constitute payment for said goods and shall not waive the mechanics' lien rights of the drawer."

The trade acceptance was not paid. The plaintiff being unable to collect from the plumbing company seeks a recovery against the bonding company.

It is the contention of the defendant that the plaintiff is not entitled to recover against it upon several grounds: <em>First,</em> that the plaintiff was not a party to the bond and has no right of action against it; <em>second,</em> that assuming that under the law of the State of Kentucky a right of action exists, the enforcement of the right

is a matter of procedure and that, therefore, the *lex fori* is applicable and that there is no right of action given by the law of the State of New York to the plaintiff against the defendant under a bond of this character; *third*, that the acceptance of a trade acceptance due in forty-five days was an extension of time to the debtor that released the surety.

The plaintiff placed upon the witness stand Mr. Goldsmith, an attorney from Kentucky, as an expert witness upon the law of Kentucky. He testified that under the law of Kentucky a right of action exists against the bonding company to one furnishing materials to a contractor. He supported his opinion by citing various decisions of the Kentucky courts. Basing our opinion upon his testimony and a consideration of the judicial decisions of the State of Kentucky, we do not think that there is any question but that under the bond and contract in this case the plaintiff in this case has a right of action directly against this defendant. The question has recently been discussed and determined in the case of *Ætna Casualty & Surety Co.* v. *United States Gypsum Co.* (239 Ky. 247; 39 S. W. [2d] 234). In the opinion in that case the court in its opinion says: " This question was considered at length by us in the case of *Standard Oil Co.* v. *National Surety Co.*, 234 Ky. 764. We there said:

" ' We have in Kentucky two distinct lines of decision in cases of this character. If the bond, when read in connection with the contract, contains a provision obligating the contractor to pay for the material, or to compensate the laborers, it constitutes a provision for the benefit of the laborers and materialmen, upon which they are entitled to maintain an action directly against the surety [citing many cases]. On the other hand, when the bond is one solely to secure performance of the contract and contains no language from which an express covenant for the benefit of third parties may be derived, an action thereon by a stranger to the contract may not be maintained ' [citing cases].

" The problem presented, therefore, is the interpretation of the written instruments to ascertain whether they contain any provision for the benefit of the materialmen, of whom appellant was one. If so, the line of cases first indicated controls, and the action may be maintained; but, if the contract and accompanying bond, fairly construed, do not contain any provision for the benefit of the materialmen, the second line of cases govern."

The language of the bond and contract in the present case is practically the same as in the case of *Ætna Casualty & Surety Co.* v. *United States Gypsum Co. (supra)*.

As a second defense, the defendant claims that the question

whether a materialman may sue the surety direct is a matter of procedure that must be governed by the law of the State of New York.

"The broad, uncontroverted rule is that the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy." (5 R. C. L. 918.)

The term " remedy " means: " The means employed to enforce a right or redress an injury." (Bouvier Law Dict.)

In the recent case of *U. S. Mortgage & Trust Co.* v. *Ruggles* (258 N. Y. 32) the court held that matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitations, are governed by the *lex fori* and depend upon the law of the place where the suit is brought.

In *Franklin Sugar Refining Co.* v. *Lipcwicz* (247 N. Y. 465, at p. 469) the court quotes with approval from the case of *Pritchard* v. *Norton* (106 U. S. at p. 129) as follows: " The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

The " substance " in this case is that the law of the State of Kentucky gives to the plaintiff a right of action directly against the defendant. The " right " has been transferred to the State of New York for enforcement. The manner in which it may be enforced in the State of New York is governed by the law of this State.

As a third defense, the defendant contends that conceding that the law of the State of Kentucky gives a right of action by the plaintiff directly against the defendant, the law of the State of New York must be applied to the case as to the effect of the extension of credit by the plaintiff to the contractor. There was no proof of the Kentucky law upon that subject. The law of the State of New York, must, therefore, be applied to the facts in determining the question as to whether or not there was a release of the surety.

It is the well-settled law of the State of New York that an extension of time to a principal releases a surety. The main question, therefore, in this case is as to whether the arrangement for payment in the light of the terms of the surety bond and the contract of the contractor with the board of education constituted

such an extension of time that, viewing it from the standpoint of the law of the State of New York, the defendant was released.

In *Shipman* v. *Kelley* (9 App. Div. 316) the court says: " What is ' giving time ' was defined by the court in *Howell* v. *Jones* (1 Cromp. M. & R. 107) in the following terms: ' We think it means extending the period at which, by the contract between them, the principal debtor was originally liable to pay the creditor, and extending it by a new and valid contract between the creditor and the principal debtor, to which the surety does not assent.' "

There is no definite time fixed in the bond as to the time of payment. The requirement is that the payment must be made " promptly." What is meant by " promptly " is a question of fact. It certainly could not be said as a matter of law that the contractor was obliged to pay in one day, or one week or one month. A jury would be justified in finding as a matter of fact that the custom of the trade was determinative of that question.

An illuminative case pertinent to the thought we intend to express is that of *Louisville Mfg. Co.* v. *Welch* (10 How. [U. S.] 461). In that case the action was upon a letter of credit signed by the defendant as follows: " I hereby guaranty the payment of any purchases of bagging and rope which Thomas Barrett may have occasion to make between this and the 1st of December next." The defendant contended that the extending of credit to the principal beyond December first released him. The court said: " As credit was contemplated, indeed was the special object of the guaranty, that which was given upon the sales of goods of this description in the ordinary course of trade must have been intended. * * * The time for which credit was to be given upon the purchases is left indefinite in the instrument, and must receive a reasonable interpretation; one within the contemplation of the parties; and that obviously is as we have stated."

In the case of *Crosby* v. *Wyatt* (10 N. H. 318) the court held: " It is well settled that if a binding agreement is made between the creditor and the principal, for an extension of the time of payment, without the assent of the surety, the latter is discharged. But if the surety assent to the agreement, he will still be bound. This assent may be proved, like other facts, by circumstantial evidence. And a regular usage of a bank, to receive payment by instalments, or checks, at sixty or ninety days, or whatever length of time such regular rule prescribes, with interest on the balance in advance, furnishes presumptive evidence of the assent of those who become parties to notes to the bank, that the payment may be delayed and received in instalments, according to such usage, until the contrary is shown. The usage of banks, to receive payment

in this way, varying, however, as to time, has been too often proved, and is too universal to escape the knowledge of those generally who deal with them; and sureties on notes to them must be understood to assent to such usage, if it be shown to be the regular usage."

In *City of Pendleton* v. *Jeffery* (95 Ore. 447) it was held that a statute providing that the "contractor shall promptly make payments to all persons," etc., meant that all bills should be paid at their maturity.

The language of the court in the case of *Guaranty Company* v. *Pressed Brick Co.* (191 U. S. 416) is quite pertinent as bearing upon the knowledge that the surety company in a case of this character is assumed to possess. In that case the language of the bond was the same as that in the present case. It was held in that case that the bond was given solely to protect the material-men because no mechanics' liens could be filed against the property of the government. A question was certified to the court: "Did the extension of time of payment of this balance by the taking of the notes operate to discharge the guaranty company from liability?" The court in the course of its opinion said: "The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of sixty days, or whether, after the materials are furnished, the time for payment is extended sixty days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain."

No case has been brought to my attention, nor have I been able to discover any, that is decisive as to the law of the State of New York as applicable to this case.

The nearest approach to it, and the one upon which the counsel for the defendant chiefly relies, is the case of *Lyth* v. *Hingston* (14 App. Div. 11). In that case it was provided by the bond that the materials should be paid for when "the same shall become due." One of the plaintiffs testified that the account became due upon a certain day and that thereafter notes were accepted and extended from time to time and never paid. The court quite well held that under the testimony there was an extension of time after the due date.

In the present case it must be borne in mind that the terms of payment were a part of the contract between the plaintiff and the contractor. It is shown by the testimony that the arrangement for payment was such as was usual in the trade. It must be assumed that the contractor when he ordered the materials knew that he would not be required to pay for them until the expiration of the time usually granted for payment. It was contemplated by the surety that time would be given as was usually given, otherwise it would have been provided that the contractor should pay in cash at the time of the receipt of the materials. A proper construction of the contract is that the contractor would promptly pay at the time that the debt became due. Under the trade practice the debt did not become due until the maturity of the trade acceptance. The plaintiff did not accept the trade acceptance as payment of the debt but only as evidence of the debt and presented it for payment at the time the debt became due. I have come to the conclusion, therefore, that there was no extension of time such as makes applicable to it the rule of the State of New York that an extension of time to the principal releases the surety.

A verdict may be entered upon the minutes in favor of the plaintiff and against the defendant in the sum of $2,428.96, with interest from May 31, 1927.