## SHIELDS et al. v. PETTIE and MANN.

The plaintiffs executed a written memorandum importing that they had sold to the defendants one hundred and fifty tons of pig iron, of a certain quality, " on board the ship S.," it being understood by both parties that the ship was then at sea. This, it seems, was not a sale, but an agreement to sell the iron on condition of its arrival in port.

And, therefore, it seems, that when the ship arrived with the quantity of iron on board, but of an inferior quality, the contract was at an end and bound neither party.

The defendants, however, having received a part of the iron before ascertaining its [123] quality, and then having refused to accept or pay for it as of the quality required by the contract; held, after a demand to return what they had received, with

which they were unable to comply in consequence of having sold some of it, that there was an implied promise on their part to pay for the iron so received at its value in market at the time of the demand.

And therefore, *held further*, that the plaintiffs under a general count in assumpsit were entitled to recover the market value of the iron received by the defendants, although it had risen in market at the time of the demand, so that its value exceeded the price agreed to be paid for the iron mentioned in the contract.

APPEAL from the superior court of the city of New-York, where the action was assumpsit to recover the price of a quantity of pig iron. The declaration was upon a special contract of sale, and contained also general counts for goods sold at a fixed price and at a *quantum valebant.* On the trial before Oakley, C. J. it was proved that a contract was negotiated between the parties by Thos. Ingham, a broker, and was concluded in these words :—

" New York, July, 19, '47.—Sold for Messrs. Geo. W. Shields & Co., to Messrs. Pettie & Mann, 150 tons Gartshemi pig iron, No. 1, at $29 per ton, one half at 6 mos., one half cash less 4 pr ct., on board Siddons. THOS. INGHAM, broker."

It was understood by both parties that the ship Siddons was at sea when the contract was made, and she arrived at the port of New York about ten days afterwards, with the quantity of iron contracted for, but which turned out not to be of the quality denominated No. 1. The defendants received between 60 and 70 tons of the iron, but upon ascertaining its quality declined to accept and pay for it, or for the residue, as of the quality required by the contract. The plaintiffs offered to deliver the residue in fulfilment of the contract, and upon the defendants' declining to accept, the former demanded payment for the portion delivered at the contract price, and this being refused, they required that the iron which had been taken should be returned ; which was not complied with. By this time No. 1 iron had advanced about $3,50 per ton above the contract price. The defendants had parted with a portion of the iron before the demand for its return.

The jury were instructed that under the circumstances [124] of the case, the law implied a new contract on the part of the

defendants to pay for the iron which they had received at the then value thereof in market. The plaintiffs recovered a verdict of $2197,39, and had judgment thereon. The defendants appealed.

*W. Hall,* for appellants.

*N. Hill, Jr.* for respondents.

HURLBUT J. In my judgment the contract was not a sale but an agreement to sell, which was not executed, and which could only be required to be executed upon the arrival of the ship with the iron on board. The arrival of the vessel without the iron would have put an end to the contract, which was conditional, as a sale to arrive. The vessel was at sea at the time; this was known to both parties, and neither could be certain either of her arrival or of her bringing the iron. If a part only had arrived, the plaintiffs would not have been bound to deliver nor the defendants to accept it. There was no warranty, express or implied, either that any iron should arrive, or that arriving, it should be of a particular quality. One hundred and fifty tons of Gartshemi pig iron of the quality denominated No. 1, was expected to arrive by the Siddons, and the contract was to the effect, that if that quantity and quality of iron did so arrive, one party should sell and the other should receive it at a certain price per ton. The iron called for by the contract did not arrive, but iron of a different quality, and I think the contract was at an end. (*Boyd* v. *Siffkin,* 2 *Camp. N. P. R.* 326; *Alewyn* v. *Pryor,* 1 *Ryan & Moody,* 406; *Lovatt* v. *Hamilton,* 5 *Mees. & Wels.* 639; *Johnson* v. *McDonald,* 9 *id.* 600 *Russell* v. *Nicholl,* 3 *Wend.* 112.)

The jury were instructed that under the circumstances of the case, the law implied a contract on the part of the defendants to pay for the iron which they received at the then value of the same in the market, and they found accordingly: which [125] in effect compelled the defendants to pay for an inferior article a greater price than that stipulated for in the contract.

Shields *v.* Pettie.

This arose from the circumstance of a rise in the market, intermediate the contract and the time of delivery. But this ought not to affect the rule of damages which can not bend to an accident of this nature, but must remain the same in a case like the present, whether the commodity rise or fall, or remain stationary in the market. Where, upon a sale of goods, there is no agreement as to the price, the law implies a contract on the part of the buyer to pay for them at the market value. The present case can not be excepted from the operation of this rule. There was no error in the charge of the learned judge, provided the law implied a promise on the part of the defendants to pay any thing whatever for the iron which they received. This they had taken in good faith, supposing that it answered the contract, and intending to pay for it accordingly; but finding it to be of an inferior quality, they declined to pay the contract price, and upon a demand of the iron were not in a condition to restore it, as they had parted with a portion of it. They however had received the iron rightfully, in the character of vendees, and up to the time of the demand by the plaintiffs, the case exhibits nothing in the nature of a tort, but savors altogether of contract. After the demand and refusal, the case was so far modified as to assume, technically at least, the complexion of a tort, so that trover might have been maintained by the plaintiffs. But although they might have done so, were they bound to bring their action in that form, or were they at liberty to disregard the tort and to treat the defendants as still retaining their original characters of purchasers of the iron and to charge them accordingly? I perceive no reason why they may not be permitted to do so. The goods were neither wrongfully taken, nor do the defendants claim title to them. The case rested originally in contract, and the only difference between the parties, related to the price of the article delivered. If the plaintiffs had brought trover, the rule of damages would not have been more favorable to the defendants than the one laid down at the trial; and I am unable to perceive in what respect they can be injured by the present form of action. [126] In general it would be the most favorable to the defendant. In

*Young* v. *Marshall,* (8 *Bing. R.* 43,) Ch. J. Tindal declared that no party was bound to sue in tort, when by converting the action into one of contract he does not prejudice the defendant. It is not necessary to go this length, nor as far as the court went in *Hill* v. *Davis,* (3 *New Hamp. R.* 384,) for the purpose of determining the question before us ; nor is the point presented in the last case of much importance, since the distinctions which obtained at common law in the forms of action, have been abrogated in this state. I therefore abstain from expressing any opinion upon it. It is enough for our present purpose, that in the case before us, the cause of action arose out of an imperfect sale and delivery of goods, and not out of a wrongful taking of them by the defendants ; that the tortious feature in the case is scarcely one of substance but is rather of a technical character ; that in effect the parties must be deemed to have agreed as to every thing except the price of the goods ; and that this being so, the plaintiffs were at liberty to disregard whatever might savor of tort, and require the defendants to respond in their substantial characters as purchasers of the iron for what it was worth in the market.

The judgment of the superior court ought to be affirmed.

Judgment affirmed.