J. A. Kirsch & Co., Inc., Plaintiff, v. Joseph De A. Benyunes, Defendant.

(Supreme Court, New York Special Term, January, 1919.)

Contracts — conditions contained in — sale of goods en route — pleading — Personal Property Law, §§ 88, 89.

> A written contract whereby defendant agreed to sell to plaintiff 2,800 baskets of Spanish chestnuts, good quality, which both parties believed from report had been shipped and were on a certain steamship then *en route* to the port of New York, is conditioned upon the arrival of the steamer with the goods described in the contract and, upon the arrival of the vessel in said port without such goods, the contract is at an end.

> Where there is nothing to show that defendant knew the quality of the chestnuts, which, at the time of the making of the contract of sale, had been upon the ocean more than fifteen days, and the answer in an action for non-delivery alleges that they had deteriorated in quality without the knowledge of the defendant, the words "good quality" in the contract must be held to be merely descriptive of the goods and not to constitute a collateral warranty.

The complaint in an action for non-delivery of the chestnuts, after setting forth the contract, alleged the due arrival of the steamer at New York on a certain date with the 2,800 baskets of chestnuts aboard but that defendant repeatedly neglected and refused to deliver said chestnuts and still fails and refuses to deliver the same. The defendant, in various forms, by separate affirmative defenses alleged facts intended to bring the case within sections 88 and 89 of the Personal Property Law.

The first affirmative defense, after alleging that the contract of sale was for a specific shipment of 2,800 baskets of chestnuts at the time aboard a certain steamer on its way to New York, pleaded that after the making of the contract and before the arrival of the chestnuts, without defendant's fault, part of the chestnuts perished or the whole or a material part so deteriorated in quality as to be substantially changed in character.

The second affirmative defense contains the same allegation except that it pleaded that subsequent to the making of the contract the chestnuts wholly rotted and perished.

The third affirmative defense alleged that at the time of the contract of sale, the chestnuts had, without the knowledge of defendant, perished in part or had wholly or in a material part so deteriorated in quality as to be substantially changed in character.

The fourth affirmative defense alleged that at the time when the sale was made the chestnuts had, without the knowledge of defendant, wholly rotted or perished. Upon overruling a demurrer to all the said affirmative defenses, with leave to withdraw, *held:* the contract was susceptible of the interpretation that defendant merely agreed that if goods such as described in the contract arrived, defendant would deliver them to plaintiff for the agreed price, and that without regard to sections 88 and 89 of the Personal Property Law, the fact that 2,800 baskets of good quality did not arrive as contemplated by the parties, would of itself end the contract and release defendant from any obligation thereunder, because his promise to sell and deliver such goods was based upon a condition which was never fulfilled.

The defendant was not bound under the contract to deliver the whole number of baskets of chestnuts of good quality and in good condition, unless he had expressly and unconditionally so agreed, and that if the allegations of the answer are true he has not made such a promise.

Where both parties are desirous that at the affirmative defenses shall be considered upon their merits, the court is justified in disregarding any claim that technically said affirmative defenses should have contained denials of such allegations of the complaint as could be proven under a general denial.

DEMURRER to defenses.

Henry L. Franklin, for plaintiff.

Phillips, Mahoney & Leibell, for defendant.

LEHMAN, J.   The complaint herein alleges that the plaintiff and the defendant on the 27th day of November, 1916, entered into a written contract, a copy of which is annexed to the complaint.

The material parts of the said contract are as follows: " Sold to Messrs. J. A. Kirsch & Co., Inc., New York.   For account of Mr. J. D. A. Benyunes, New York.   Quantity (about) Twenty-eight hundred (2,800) baskets of about 110 net each, crop 1916, good quality Spanish chestnuts at seven cents (7c) per pound net, ex dock New York.   Shipment.   Reported by cable to be afloat per SS. ' Elef K. Venezelos,' scheduled to be due here to-day."

The complaint. further alleges that the said 2,800 baskets of chestnuts duly arrived on the *Elef K. Venezelos* in the city of New York on the 28th day of November, 1916, but the defendant repeatedly neglected and refused to deliver the said 2,800 baskets of Spanish chestnuts purchased by the plaintiff from him, and still fails and refuses to deliver the same.   The defendant claims that the steamer *Venezelos* sailed from the port of Lisbon, Portugal, on or about November 12, 1916, and did not arrive at the port of New York until December 2, 1916; that the chestnuts covered by the agreement of November twenty-seventh between the parties arrived in a mouldy condition, and that the

department of agriculture directed that the entire shipment should be destroyed except approximately 228 baskets of the said chestnuts which had not deteriorated, and which were found to have passed the standards of the United States Government. The defendant has pleaded this claim, in various forms, in five separate affirmative defenses, and the plaintiff has demurred to the sufficiency thereof. Upon this motion the court must first consider whether the facts claimed by the defendant could constitute a defense to an action for non-delivery of the chestnuts, and second, if they could constitute a defense, whether they are sufficiently pleaded in any or all of the separate defenses contained in the answer.

The first affirmative defense alleges in effect that the contract of sale was for a specific shipment or consignment of 2,800 baskets of Spanish chestnuts at that time aboard the steamer *Venezelos,* on its way to the port of New York. That subsequent to the making of the aforementioned contract of sale of the said consignment of chestnuts, and before their arrival at a dock in the port of New York, without any fault on the part of the defendant, part of the consignment of chestnuts perished, or the whole or a material part of said consignment of chestnuts so deteriorated in quality as to be substantially changed in character.

The second defense contains the same allegation except that it states that subsequent to the making of the aforementioned contract the said consignment of chestnuts wholly rotted and perished.

The third affirmative defense alleges that at the time the agreement of sale was made the consignment of chestnuts had, without the knowledge of this defendant, perished in part or had wholly or in a material part so deteriorated in quality as to be substantially changed in character.

The fourth affirmative defense states that at the time when the said sale was made the consignment of chestnuts had, without the knowledge of this defendant, wholly rotted or perished.

It is quite evident that the defendant in pleading these defenses intended to allege facts which would bring this case within the rule announced in sections 88 and 89 of the Personal Property Law. The plaintiff, however, urges that sections 88 and 89 have no application, because (1) under the agreement between the parties the defendant did not sell specific goods on the steamship *Venezelos,* but merely agreed to deliver 2,800 baskets of chestnuts, complying with a certain description or warranty, and was absolutely bound to ship and deliver such goods, and that (2) if the contract was for the sale of specific goods it contained an express warranty that the goods were of good quality and that the rule announced in the statute has no application to a sale where there is an express warranty of quality. It seems to me quite clear under the terms of the written contract that the defendant agreed to sell and deliver certain goods described in the contract and that the contract was conditional upon the arrival of the steamship with the goods described in the contract upon it. In the case of *Shields* v. *Pettie,* 4 N. Y. 122, a broker negotiated a contract in these words: " Sold for Messrs. Geo. W. Shields & Co., to Messrs. Pettie & Mann, 150 tons Gartshemi pig iron, No. 1, at $29 per ton, one-half at 6 mos., one-half cash, less 4 pr. ct., on board Siddons." It was understood by both parties that the ship *Siddons* was at sea when the contract was made, and she arrived at the port of New York about ten days afterwards with the quantity of iron contracted for, but which turned out not to be the quality denominated No. 1. The court there held " There was no warranty, express or implied,

either that any iron should arrive, or that arriving, it should be of a particular quality. One hundred and fifty tons of Gartsherni pig iron of the quality denominated No. 1, was expected to arrive by the *Siddons,* and the contract was to the effect, that if that quantity and quality of iron did so arrive one party should sell and the other should receive it at a certain price per ton. The iron called for by the contract did not arrive, but iron of a different quality, and I think the contract was at an end.'' It seems to me that the same rule of law applies to the facts in the present case as pleaded by the defendant. The defendant agreed under that contract to sell to the plaintiff certain specific goods described therein, which both parties evidently believed to be upon the steamship *Venezelos.* The defendant did not agree to deliver and the plaintiff did not agree to accept any goods of similar kind which might arrive upon another steamship. No goods of that description arrived on the steamship *Venezelos,* and the contract to sell was therefore at an end. The authority of the case of *Shields* v. *Pettie, supra,* has apparently never been questioned in this state, although there are decisions which distinguish and perhaps limit the application of that decision. In the case of *Abe Stein Co.* v. *Robertson,* 167 N. Y. 101, the defendant agreed to sell certain goatskins '' expected to arrive from China at 22 cts. per lb. Goods to be shipped immediately by steamer or steamers to New York.'' Thereafter the defendant did ship goatskins from China, but when they arrived they were not of the quality prescribed. In that case the court held that the right of recovery in the buyer was not conditional upon the arrival of the goods of the quality specified in the agreement, stating: '' The principle that if the goods specified and described in the contract do not arrive, a condition

which terminates the contract exists and the seller is
not liable, has no application where the contract con-
tains either a warranty that the shipment has been
made or an express agreement upon the part of the
seller to make shipment of goods described.'' In the
present case it seems to me quite evident that the
written contract contained no warranty that the ship-
ment had been made and no express agreement upon
the part of the seller to make a shipment of goods
described, but that, on the contrary, the contract was
made in reliance upon a report that such goods had
been shipped on the steamer *Venezelos,* and was con-
ditioned upon the arrival of that steamer with such
goods. It may, however, be urged that the words
'' good quality '' are not words of description, but
constitute a warranty by the defendant, and that since
2,800 baskets of Spanish chestnuts as described in the
contract arrived on the steamship *Venezelos* the condi-
tion upon which the vendor's liability depends was
fulfilled, and the vendor was obliged to deliver the
goods described in the contract of sale and in addition
to comply with his collateral warranty that the goods
were of good quality. See *Dike* v. *Reitlinger,* 23 Hun,
241.

In my opinion, however, these words do not consti-
tute a collateral warranty, but constitute merely a
description of the goods covered by the contract of sale.
It is true that in the case of *Egbert* v. *Hanford Produce
Co.,* 92 App. Div. 252, the court stated: '' The rule
seems to be well settled that upon a sale of personal
property where inspection of it is not possible at the
time, and the seller knows the quality and the buyer
does not, the representations made by the seller as to
quality are to be regarded as a warranty.'' In the
present case, however, there is nothing to show that
the seller knew the quality. On the contrary, the goods

had at that time been upon the ocean more than fifteen days, and the answer specifically alleges that they had deteriorated in quality without the knowledge of the defendant.

Moreover, the first and second affirmative defenses allege deterioration after the making of the contract, and the defendant could certainly not have had any knowledge at that time that they would not deteriorate thereafter. I have not overlooked the fact that by section 92 of the Personal Property Law it is provided (1) " Where the obligation of either party to a contract to sell or a sale is subject to any condition which is not performed, such party may refuse to proceed with the contract or sale or he may waive performance of the condition. If the other party has promised that the condition should happen or be performed, such first mentioned party may also treat the nonperformance of the condition as a breach of warranty.'' Under this provision the distinction between an implied warranty of condition that the goods sold shall comply with the description and an express warranty that the goods shall be of the quality named is for most purposes destroyed.

Before, however, a party may treat the non-performance of the condition as a breach of warranty it must appear that the other party has actually promised that the condition should happen or be performed, whereas in the present case the contract is certainly susceptible of the interpretation that the defendant did not agree that the goods to be delivered under the contract should comply with the description, but merely agreed that if such goods arrived it would deliver them for the agreed price to the plaintiff. If these views are correct, then the fact that 2,800 baskets of good quality chestnuts did not arrive on the steamship as contemplated by the parties would in itself and

without regard to sections 88 and 89 of the Personal Property Law put an end to the contract and release the defendant from any obligation thereunder, for the defendant's promise to sell and deliver such goods was based upon a condition which was never fulfilled. On the other hand, if the contract be regarded as a contract to sell specific goods which actually arrived in New York upon that steamer, and the description was inserted merely for the purpose of identifying the goods, then sections 88 and 89 of the Personal Property Law apply, and if the goods had perished at the time when the agreement was made, or the goods without the knowledge of the seller had deteriorated in quality so as to be substantially changed, or if after the contract was made the goods perished or so deteriorated in quality, the defendant could not be held liable for the loss which occurred without his fault. In other words, the defendant is clearly not bound under this contract to deliver the 2,800 baskets of Spanish chestnuts of good quality and in good condition unless he has expressly and unconditionally agreed to sell and deliver such chestnuts, and I think that, if the allegations of the answer are true, the defendant has not made such a promise.

I have, however, some doubts as to whether the affirmative defenses are technically sufficient. The complaint not only sets forth the agreement, but it alleges " that the defendant agreed to sell and deliver ex dock, New York, to the plaintiff, 2,800 baskets of good quality Spanish chestnuts, * * * and that the defendant further represented and agreed that the said 2,800 baskets of Spanish chestnuts were to be delivered on the steamer *Elef K. Venezelos,* which steamer as well as the 2,800 baskets of Spanish chestnuts arrived in the city of New York on the 28th day of November, 1916." The separate affirmative defenses do not deny

these allegations, and the plaintiff claims that the defendant has thereby admitted by failure to deny that he warranted the chestnuts to be of good quality and agreed that they were to be delivered on the steamer named. In my opinion, however, since the plaintiff has set forth the contract itself, these allegations must be regarded as conclusions of law to be drawn from the contract itself, and since they are conclusions of law, the defendant was not bound to deny them. The complaint, however, also contains the allegation "that the said 2,800 baskets of chestnuts duly arrived on steamer *Elef K. Venezelos* in the city of New York on the 28th day of November, 1916," and "that the defendant repeatedly neglected and refused to deliver the said 2,800 baskets of Spanish chestnuts purchased by the plaintiff from him as hereinbefore alleged." These allegations are also not denied by the defendant. It might be urged that the words "the said 2,800 baskets of chestnuts" refer to the chestnuts previously described in the complaint, to wit, "2,800 baskets of good quality Spanish chestnuts," and that the defendant by failing to deny these allegations has admitted their truth. If the complaint is to be interpreted in this way, then upon the trial the plaintiff must establish these allegations in order to make out its cause of action, and the facts which the defendant is now seeking to set up could probably be proven under a general denial.

The entire argument, however, of both parties upon this motion is based upon the view that when the chestnuts arrived in New York they did not comply with the description and were not of good quality. Under such circumstances it seems to me that it would be unfair to hold the plaintiff to such a construction of the complaint, but the complaint should rather be construed in accordance with the evident intent of the pleader,

42

as alleging only that 2,800 baskets of Spanish chestnuts arrived in the port of New York.

Both sides seem to desire that the court should pass upon the affirmative defenses upon the merits, if possible, and under these circumstances I feel that I am justified in disregarding any possible claim that the affirmative defenses should technically have contained denials of such allegations of the complaint or that the facts alleged in the affirmative defenses might possibly be proven under a general denial. These considerations dispose of the objections to the first four affirmative defenses. The fifth affirmative defense contains allegations as to the custom in the city of New York in regard to warranties as to quality and condition of goods sold while aboard ship in transit to the port of New York. I agree with the plaintiff that no such custom could be proven to vary the written contract, if it contained an express warranty. On the other hand, the custom might be material and relevant to determine the rights of the parties where the goods arrived in poor condition and there has been no warranty of delivery in good condition. However, it seems to me that the court cannot upon this motion pass upon the effect of the allegation of custom because, in any event, this affirmative defense repeats sufficient allegations contained in the previous defenses to make out a defense to the action aside from the allegations to which the plaintiff objects. For these reasons the plaintiff's motion for judgment sustaining the demurrers is denied, with ten dollars costs, and with leave to the plaintiff to withdraw his demurrers upon payment of said costs.

Ordered accordingly.