FRANKLIN SUGAR REFINING COMPANY, Respondent, *v.*
STANISLAUS LIPOWICZ et al., Appellants.

Contracts — sale — Statute of Frauds — sufficiency of memoranda of sale under Statute of Frauds of Pennsylvania — action in this State to recover difference between contract price and market price at date of refusal to accept delivery — parol proof proper to explain trade expressions contained in memoranda of sale — necessity of resort to parol proof to ascertain prevailing trade differentials does not render memoranda incomplete under Statute of Frauds — disregard of differentials by court in reckoning damages immaterial.

1. Contracts of sale, made in the State of Pennsylvania, evidenced by memoranda which bound the purchaser to buy a given quantity of fine granulated sugar in barrels at a stated price per pound, or an equivalent amount of other sugars in other packages at the same rate plus or minus a differential for the particular assortment, which was definitely ascertainable by a reference to the sugar market and the differentials prevailing therein at the moment, are valid and the memoranda sufficient under the Statute of Frauds of Pennsylvania as interpreted by the courts of that State.

2. In an action brought in this State to recover the difference between the contract price and the market price at the time of refusal to receive deliveries of sugar, it was proper to resort to parol proof to explain the expressions " bbls " and " Basis 22½ " contained in the memoranda of sale. Moreover for the purposes of the Statute of Frauds, the memoranda must be regarded as incorporating the explanatory words.

3. An argument that, while the memoranda would have satisfied the Statute of Frauds if " Basis 22½ " indicated a flat price of twenty-two and one-half cents per pound for all grades of sugar, they were nevertheless insufficient since a resort to parol proof to ascertain the prevailing trade differentials would be required, cannot be sustained. Where parties have contracted to buy and sell without naming a price, a memorandum which fails to express a contract price may be sufficient to satisfy the Statute of Frauds. Where the parties have agreed upon " current rates " as the price, a memorandum so specifying, if otherwise complete, will satisfy the statute. So, also, where, as here, the memoranda expressed an agreed price for granu-

30

lated sugar and prices for other grades and packages were to be ascertained by applying various differentials to the granulated price, which at any given time were well established facts of the sugar market, the necessity of a recourse to that market for their ascertainment did not render the memoranda incomplete. (*Franklin Sugar Refining Co.· v. Howell*, 274 Penn. St. 190; *Franklin Sugar Refining Co*. v. *Kane Milling & Grocery Co.*, 278 Penn. St. 105; *Franklin Sugar Refining Co.* v. *John*, 279 Penn. St. 104, distinguished.)

4. The fact that the court in reckoning the damages disregarded the differentials is immaterial where from the evidence it may be presumed that they did not change between the date of the contracts and the date of the breaches thereof.

*Franklin Sugar Refining Co.* v. *Lipowicz*, 220 App. Div. 160, affirmed.

(Argued January 16, 1928; decided March 27, 1928.)

APPEAL from a judgment, entered March 29, 1927, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendants, entered upon a verdict directed by the court and directing judgment in favor of plaintiff.

*Frank G. Raichle* and *Carlos C. Alden* for appellants. The writings offered by plaintiff do not satisfy the requirements of the Statute of Frauds either of New York or of Pennsylvania. (Pers. Prop. Law, § 85; Pennsylvania Sales Act, § 4; Williston on Sales [2d ed.], §§ 73, 75, 87, 103; *Stone* v. *Browning*, 51 N. Y. 211; 68 N. Y. 598; *Franklin Sugar Refining Co.* v. *Howell*, 277 Penn. St. 190; *Franklin Sugar Refining Co.* v. *Kane M. & G. Co.*, 278 Penn. St. 105; *Franklin Sugar Refining Co.* v. *John*, 279 Penn. St. 104; *Wilson* v. *Lewiston Milling Co.*, 150 N. Y. 314; *Ward* v. *Hasbrouck*, 169 N. Y. 407; *Brauer* v. *Oceanic Steam Nav. Co.*, 178 N. Y. 339.) The Statute of Frauds of Pennsylvania should be applied and the decisions of the Pennsylvania courts should be received as controlling. (*Blanchard* v. *Russell*, 13 Mass. 1; *Manhattan Life Ins. Co.* v. *Johnson*, 115 App. Div. 429; *Bath Gas Light Co.* v. *Rowland.* 85 App. Div. 563; 178 N. Y.

631; *Franklin Sugar Refining Co.* v. *Howell,* 274 Penn. St. 190; *Franklin Sugar Refining Co.* v. *Kane M. & G. Co.,* 278 Penn. St. 105; *Franklin Sugar Refining Co.* v. *John,* 279 Penn. St. 104; *Scudder* v. *Union Nat. Bank,* 91 U. S. 406; *Riley* v. *Bancroft's Estate,* 51 Neb. 864; *Wilson* v. *Lewiston Mill Co.,* 150 N. Y. 314; *Porter* v. *Wormser,* 94 N. Y. 431; *Crane* v. *Powell,* 139 id. 379; *Daniels* v. *Rogers,* 108 App. Div. 338; *Throop Grain Cleaner Co.* v. *Smith,* 110 N. Y. 83; *Daniels* v. *Rogers,* 108 App. Div. 338; *Goetschius* v. *Brightman,* 245 N. Y. 186.)

*Joseph F. Abbott* and *Adelbert Moot* for respondent. The Statute of Frauds contained in the Uniform Sales Act of Pennsylvania is not a defense to this action. (*Downer* v. *Chesebrough,* 36 Conn. 39; *Daniels* v. *Rogers,* 108 App. Div. 338; *Marie* v. *Garrison,* 13 Abb. N. C. 210; *Emery* v. *Burbank,* 163 Mass. 326; *Marvel* v. *Marvel,* 70 Neb. 498; *Obear* v. *First National Bank,* 97 Ga. 587; *Wolfe* v. *Burke,* 18 Colo. 264; *Heaton* v. *Eldridge,* 56 Ohio St. 87; *Producers' Coke Co.* v. *Hoover,* 268 Penn. St. 104; *Manufacturers' Light & Heat Co.* v. *Lamp,* 269 Penn. St. 517; *Franklin Sugar Refining Co.* v. *Howell,* 274 Penn. St. 190; *Franklin Sugar Refining Co.* v. *Lykens Mercantile Co.,* 274 Penn. St. 206; *American Products Company* v. *Franklin Quality Refining Co.,* 275 Penn. St. 332; *Franklin Sugar Refining Co.* v. *John,* 279 Penn. St. 104.) The contracts sued on were definite and certain when the terms are explained by trade usage. The memoranda thereof were sufficient to satisfy the Statute of Frauds contained in the Uniform Sales Act as adopted in New York. (*Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.,* 245 N. Y. 305; *Nicoll* v. *Pittsvein Coal Co.,* 269 Fed. Rep. 968; *Humphrey* v. *Dale,* 7 E. & B. 266; E. B. & E. 1004; *Atkinson* v. *Truesdell,* 127 N. Y. 230; *Franklin Sugar Ref. Co.* v. *Egerton,* 288 Fed. Rep. 698; *Straesser Arnold Co.* v. *Franklin Sugar Ref. Co.,* 8 Fed. Rep. [2d] 601; *Milliken-Tomlinson Co.* v. *Am. Sugar Ref. Co.,* 9

Fed. Rep. [2d] 809; *Franklin Sugar Ref. Co.* v. *Mullen Co.*, 12 Fed. Rep. [2d] 885; *Whitman & Co.* v. *Namquit Worsted Co.*, 206 Fed. Rep. 549; 221 Fed. Rep. 49; *Terry* v. *International Cotton Co.*, 136 Ga. 187; *King Collie Co.* v. *Richards*, 76 Okla. 6; *Daniel* v. *Maddox*, 194 Ga. 1063; *Gallaspy* v. *Ingersoll*, 84 So. Rep. 510.)

KELLOGG, J.  The complaint sets forth memoranda of contracts between the plaintiff Franklin Sugar Refining Company and the defendant Stanislaus Lipowicz, purporting to obligate the latter to buy from the former a quantity of sugar; a refusal by Lipowicz to receive certain deliveries of sugar; an assignment by Lipowicz to the defendant Union Liberty Company of his sugar business; an assumption by that company of the debts of Lipowicz incurred in the business; an agreed price for the sugar of 22.50 cents a pound; a market price for the sugar, at the time of the refusal, of 5.20 cents a pound; a consequent damage to plaintiff of 17.30 cents per pound for every pound of undelivered sugar, for which amount, in the aggregate, the complaint demands judgment.  The answers set up that the contract memoranda, signed on behalf of Lipowicz, were insufficient to satisfy either the Statute of Frauds of the State of Pennsylvania or the New York Statute of Frauds.

The issues joined were tried before a judge and jury. At the conclusion of the trial the parties, both plaintiff and defendant, moved the trial judge for the direction of a verdict.  The judge, deeming that the Statute of Frauds of the State of Pennsylvania was controlling, and that, therefore, the case of *Franklin Sugar Refining Co.* v. *Howell* (274 Penn. St. 190) must be followed, directed a verdict for the defendants.  The Appellate Division, upon an appeal to it, held that the Statute of Frauds of the State of New York, not of the State of Pennsylvania, was controlling; that the memoranda were sufficient to satisfy the New York statute.  Accordingly it directed

judgment in favor of the plaintiff, against the defendants Lipowicz and Union Liberty Company, for the sum of $41,113.43, a sum representing the aggregate loss of the plaintiff, calculated at the rate of 17.30 cents per pound of undelivered sugar, with interest from the date of the refusal by Lipowicz to receive it.

The Statute of Frauds of the State of Pennsylvania provides: " A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless  *  *  * some note or memorandum in writing of the contract or sale be signed by- the party to be charged or his agent in that behalf." (Sales Act of May 19, 1915, P. L. 543, section 4.) The wording of the Statute of Frauds of the State of New York is identical, with the exception that in the New York statute the words " fifty dollars " appear in the place of the words " five hundred dollars." (Personal Property Law [Cons. Laws, ch. 41], section 85.) Orders for sugar, set forth in the memoranda signed on behalf of Lipowicz, were accepted at Philadelphia, Pa. Deliveries of sugar were to be made to Lipowicz at Philadelphia, Pa. The contracts, therefore, if any such were proven, in respect to the place of origin and place of performance, were Pennsylvania contracts. Enforcement of the contracts is now sought in the courts of the State of New York. In this situation, which statute applies?

" The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract." (*Pritchard* v. *Norton*, 106 U. S. 124, at p. 129.) The Supreme Court of the State of Pennsylvania, in regard to the Statute

of Frauds of that State, has said· "Statutes, such as the one with which we are dealing, do not provide mere rules of evidence but are limitations upon the judicial authority to afford remedies." (*Manufacturers L. & H. Co. v. Lamp,* 269 Penn. St. 517.) It has held that, in an action upon a contract of sale, facts showing a compliance with the provisions of the Statute of Frauds must be asserted in the statement of claim and that, in the absence of such allegations, they may not be shown by proof offered at the trial. (*Mason-Heflin Co. v. Currie,* 270 Penn. St. 221.) In several other jurisdictions it has been definitely held that the Statute of Frauds of the State where the contract is made, rather than the statute of the State where suit is brought, is determinative of the question of enforcibility. (*Franklin Sugar Ref. Co.* v. *Holstein Harvey's Sons, Inc.,* 275 Fed. Rep. 622; *Houghtaling* v. *Ball,* 19 Mo. 84; 20 Mo. 563; *Jones* v. *National Cotton Oil Co.,* 31 Tex. Civ. App. Reports, 420; *Canale & Co.* v. *Pauly & Pauly Cheese Co.,* 155 Wis. 541; *Cochran* v. *Ward,* 5 Ind. App. 89; 51 Am. St. Rep. 229; *Halloran* v. *Schmidt Brewing Co.,* 137 Minn. 141; *Matson* v. *Bauman,* 139 Minn. 296.) These decisions find support in the writings of many learned authors. (2 Wharton, Conflict of Laws, sec. 690-f; Thayer, Preliminary Treatise on Evidence, p. 390; Goodrich on Conflict of Laws, p. 173; 32 Yale Law Journal, p. 311.) The theory seems to be that while a contract not recorded by a writing may be valid, a statute which makes it unenforcible is substantive, rather than remedial, since without enforcibility there is no contract obligation. The contrary view that a Statute of Frauds concerns, not substance, but procedure, and, therefore, that the enforcibility of a contract must be determined by the law of the forum rather than by the law of the place of its making, is held by many others. (Browne on Statute of Frauds, sec. 115-a, note; Williston on Sales, secs. 70-b, 71; Smith on the Law of Frauds, sec. 378; *Straesser-Arnold*

*Co.* v. *Franklin Sugar Ref. Co.*, 8 Fed. Rep. [2d] 601; *Buhl* v. *Stephens*, 84 Fed. Rep. 922; *Leroux* v. *Brown*, 12 C. B. 801; *Townsend* v. *Hargraves*, 118 Mass. 325; 9 Amer. Law Review, 434.)   In view of the conflict of authority upon the subject we shall assume, without deciding, that the appellants are correct in their contention that the Statute of Frauds of the State of Pennsylvania, the law of the contract, rather than the statute of the State of New York, the law of the forum, is determinative of the issues.   Nevertheless we do not agree, for reason which we shall later give, with the contention that the Pennsylvania statute, as interpreted by the courts of that State, requires a reversal of this judgment.

There were seven memoranda containing orders for sugar which were signed on behalf of the defendant Lipowicz.   In five of these memoranda, orders were expressed for a given number of " bbls. or equivalent." Each of these five memoranda contained the provisions " Assortment to be furnished the seller by buyer " and " In the event assortment is not furnished promptly seller reserves the right to ship such grades as he has available at the time of shipment."   In two of the memoranda the particular assortments desired were stated. In all seven memoranda there appeared the unintelligible phrase " Basis 22½."   It was established by undisputed testimony that, according to universal usage in the sugar trade, the expression " bbls " means fine granulated sugar in barrels containing 350 pounds; that the expression " Basis 22½ " means a basic price of 22½¢ per pound for granulated sugar.   Without further explanation, therefore, it conclusively appears that the memoranda bound Lipowicz to take a given quantity of granulated sugar in barrels at 22½¢ per pound or an equivalent amount of sugar in other assortments at the basic price of 22½¢. Further explanation of " Basis 22½ " was required and given.   It appeared that the grades of sugar are so numerous, and the containers therefor so varied, that

there are upwards of forty possible assortments which a buyer might specify. Each of these assortments has its distinctive price. Nevertheless, whatever the assortment may be, it is the trade custom to name only the basic price, to wit, the price for fine granulated sugar in barrels. There obtains in the sugar trade a system of differentials which expresses the price variations, for particular assortments, from the price for fine granulated. Knowing the price of the latter, and adding to or deducting therefrom the appropriate differential, traders will know with certainty the price of a particular assortment. These differentials are subject to alteration, although alterations are rarely made. When made, all sugar refineries concur therein, so that always, at any given time, a known schedule of differentials, definite, certain and common to the entire sugar trade, prevails and rules the market. Fully explained, therefore, the memoranda bound Lipowicz to buy a given quantity of fine granulated sugar in barrels at $22\frac{1}{2}$¢ per pound, or an equivalent amount of other sugars in other packages at the same rate plus or minus a differential for the particular assortment, which was definitely ascertainable by a reference to the sugar market and the differentials prevailing therein at the moment.

It was proper to resort to parol proof to explain the expressions " bbls " and " Basis $22\frac{1}{2}$." Moreover, for the purposes of the Statute of Frauds, the memoranda must be regarded as incorporating the explanatory words. (Wigmore on Evidence, sec. 2464; Williston on Sales, sec. 102.) A memorandum recording the sale of " eighteen pockets of hops, at 100s " is subject to the explanation that " 100s," according to trade usage, means one hundred shillings per hundredweight. (*Spicer* v. *Cooper*, 1 Gale & D. 52.) So may it be explained that in a memorandum for the sale of " one hundred and fifty casks, of one ton each, best E F F X madder $12\frac{1}{4}$ " the figure $12\frac{1}{4}$, according to trade usage, means $12\frac{1}{4}$ cents per pound. (*Dana* v.

*Fiedler,* 12 N. Y. 40.) In *Salmon Falls Mfg. Co.* v. *Goddard* (14 How. [U. S.] 446) there was considered a memorandum which recorded the sale of "300 bales S. F. drills * * * 7¼, 100 cases blue do. * * * 8¾." Parol evidence to show that "7¼" meant 7¼ cents per yard and that "8¾" meant 8¾ cents per yard was held admissible. It was also held that the memorandum was sufficient to satisfy the Statute of Frauds and that, as explained by trade usage, the memorandum should be given effect. In *Dale* v. *Humfrey* (E. B. & E. 1004; 96 Eng. Common Law Reports) it was said by COCKBURN, C. J.: "I am of opinion that, where, either by any rule of law, or by the usage of any trade, the terms of a contract acquire a particular meaning, the contract must be taken to express that meaning, as much as though it had been set forth *in extenso;* and I hold that this obtains as much for the purpose of satisfying the statute as for that of establishing the contract independently of the statute."

The argument is made that, while the memoranda would have satisfied the Statute of Frauds if "Basis 22½" indicated a flat price of 22½¢ per pound for all grades of sugar, they were nevertheless insufficient since, under the explanation given, a resort to parol proof to ascertain the prevailing trade differentials would be required. It is true that an agreement, in order to be obligatory, must be sufficiently definite to enable a court to place upon it an exact meaning. (Williston on Contracts, sec. 37.) Nevertheless an agreement for the sale of goods which specifies no price and, therefore, requires a recourse to a market for the ascertainment of a reasonable price, is a valid contract. (Id. sec. 41.) As such agreements are sufficiently definite to be obligatory it would seem that a memorandum which faithfully recorded their express terms, without more, should be sufficiently definite to satisfy the statute. Otherwise the anomalous result might follow that a valid contract would prove

unenforcible although all its express terms were reduced to writing. That result would defeat the statute, which requires only that "a note or memorandum in writing of the contract" be signed. (Personal Property Law, sec. 85.) Williston says: "The law will imply an obligation to pay a reasonable price and the memorandum need be no more definite than the contract itself was. The law will make the same implication in regard to the memorandum that it does in regard to the promise." (Williston on Sales, sec. 103.) Browne says: "It is obvious that the statute will be satisfied by a statement as to what the parties stipulated was the price to be paid, although they mentioned no specific sum." (Browne on Statute of Frauds, sec. 378.) It has been held that an order for goods "on moderate terms" is a sufficient memorandum to satisfy the statute. (*Ashcroft* v. *Morrin*, 4 Mann. & G. 450.) In that case TINDAL, C. J., expressed himself with illuminating brevity. The entire opinion reads: "The order here is, to send certain quantities of porter and other malt liquor, on 'moderate terms.' Why is not that sufficient? This is the contract between the parties." So here, the parties agreed upon a price of 22½¢ per pound for granulated sugar in barrels with additions or deductions for other grades and packages, to be determined by trade differentials well established in the sugar market. The agreements were sufficiently definite to constitute valid contracts. Each agreement was recorded in a memorandum which correctly stated all the contract terms. In the words of TINDAL, C. J., "Why is not that sufficient? This is the contract between the parties."

In *Hoadley* v. *M'Laine* (10 Bing. 482) the defendant had delivered to the plaintiff a memorandum in writing, reading as follows: "Sir Archibald M'Laine orders Mr. Hoadly to build a new, fashionable, and handsome landaulet, with the following appointments"— (here followed a detailed description of the vehicle)—"the

whole to be ready by the 1st of March 1833." The price was not mentioned. Nevertheless, it was held that the memorandum was sufficient to satisfy the Statute of Frauds. TINDAL, C. J., said: " It is clear that a contract for the sale of a commodity, in which the price is left uncertain, is, in law, a contract for what the goods shall be found to be reasonably worth. * * * What is implied by law is as strong to bind the parties as if it were under their hand." BOSANQUET, J., said: " Now the statute of frauds requires a note or memorandum of the terms of the bargain: but that is all: a party is not bound to go beyond what he has agreed on and signed. * * * Now that statute requires no more than that the bargain, such as it is, should be reduced to writing." In *Argus Co.* v. *Mayor, etc., of Albany,* (55 N. Y. 495) the common council of a city passed a resolution designating the plaintiff " to publish all the city advertising at the legal rates, and all printing and binding at current rates." The contract, which was not by its terms to be performed within one year, was unenforcible under the Statute of Frauds unless evidenced by a written memorandum. It was held that the entry of the resolution in the minute book and the signature of the clerk at the end of the day's minutes constituted a memorandum of the contract. It was further held that the Statute of Frauds was satisfied, although prices for printing and binding were not definitely stated but were to be done " at current rates." It was said by the court: " Nor does the fact that the rates for printing and binding are not expressed, but reference is made to something outside the contract, and which must be established by parol testimony, invalidate the contract."

These decisions seem conclusive upon the issues now presented. Where parties have contracted to buy and sell without naming a price, a memorandum which fails to express a contract price may be sufficient to satisfy the Statute of Frauds. Where the parties have agreed

upon " current rates " as the price, a memorandum so specifying, if otherwise complete, will satisfy the statute. In either case recourse to the general market may be had to determine the reasonable price or the current rates which control. In our case, the memoranda expressed an agreed price for granulated sugar. Prices for other grades and packages were to be ascertained by applying various differentials to the granulated price. These differentials, at any given time, were well established facts of the sugar market. The necessity of a recourse to that market for their ascertainment would no more render the memoranda incomplete than would the necessity of a similar recourse, to ascertain current rates or market price, render incomplete the memoranda relied upon in the cases cited. Unless, therefore, the Pennsylvania decisions interpreting the Pennsylvania Statute of Frauds, applicable here under our assumption, express a doctrine peculiar to that State, we think the memoranda relied upon were amply sufficient.

We do· not find, upon careful investigation, that the Pennsylvania decisions support a peculiar or contrary view. The leading case is *Franklin Sugar Ref. Co.* v. *Howell (supra)*. In that case this same plaintiff sued to recover upon contracts evidenced by memoranda, identical in all material particulars with the memoranda here involved. The decision made was based upon the pleadings. There the plaintiff relied upon a written price list, stating sugar differentials, which was issued by it to customers. The express admission was made by the plaintiff that there was " no custom of the trade (averred) which would make the price list a part of the contract obligation, * * * and even if such a custom existed it would be insufficient to bring in the price list except as to the meaning of ' basis 22.50 ' and ' assortment.' " The court said: " Assuming all this to be true, it does not meet the difficulty, for this particular list is not signed by plaintiff, either directly or by reference,

and the custom alleged does not carry it into the sales memoranda so as to make it a part thereof." It thus appears that the plaintiff based its case upon a written schedule setting forth, not the differentials generally prevailing in the sugar market, but a particular set of differentials, formulated by the plaintiff. Of course if the parties had made a particular stipulation as to price, that stipulation, unidentified by signature or by reference, and capable of identification only by parol evidence, could not be employed for the purpose of supplying terms to the written memoranda which were absent therefrom. Moreover, if special prices were a part of the bargain, the general market would not have expressed the prices agreed upon. In our case, the plaintiff places reliance upon a system of differentials which was common to the entire sugar market. Thus, the witness Buchanan, after stating that a system of differentials prevailed, was asked: " Was that confined to the Franklin Sugar Refining Company or did all refiners have that system of differentials? " His answer was: " All sugar refiners." The *Howell* case was explained, as we have explained it, in *American Sugar Ref. Co.* v. *Colvin, Atwell & Co.* (286 Fed. Rep. 685) and in *Franklin Sugar Ref. Co.* v. *Egerton* (288 Fed. Rep. 698). In each of these cases, as well as in the case of *Franklin Sugar Ref. Co.* v. *Mullen Co.* (12 Fed. Rep. [2d] 885), it was held that memoranda similar to those now in question were sufficient to satisfy the Statute of Frauds of the State of Pennsylvania. Two other Pennsylvania cases (*Franklin Sugar Ref. Co.* v. *Kane M. & G. Co.*, 278 Penn. St. 105, and *Franklin Sugar Ref. Co.* v. *John,* 279 Penn. St. 104) are relied upon by the appellants. The first case arose upon the pleadings and, like the *Howell* case, is distinguishable and upon the same grounds. In the second case it was merely held that the question, whether there were fixed differentials obtaining in the market, was a question upon which the jury should have been permitted to pass. The Penn-

sylvania cases, therefore, so far as they have been exhibited to us, express no doctrine peculiar to Pennsylvania law. Consequently, our view, that the memoranda in this case are sufficient, remains unchanged.

It is said that the court erred in reckoning damages on the basis of the difference between contract price and market price for granulated sugar without regard to the differentials for other grades which Lipowicz had the option to demand. Of course, if the differentials had changed between the date of the contracts and the date of the breaches, there would be force in the argument. However, the witness Buchanan testified in 1925 that the differentials had last been altered " in connection with the 1920 business." These memoranda were executed in May, 1920, or subsequently thereto in the same year. They involved " 1920 business." Presumably, therefore, no alteration in differentials took place between that time and the date of the breaches in December, 1921. That being the case, it was immaterial that the court in its reckoning disregarded the differentials. For, it is a self-evident fact that the difference between $22\frac{1}{2}$ cents, the contract price for granulated, and 5.20 cents, the market price therefor, must be precisely the same as the difference between $22\frac{1}{2}$ cents, plus or minus a differential, and 5.20 cents, plus or minus the same differential. We think, therefore, that the damages were correctly estimated.

The judgment should be affirmed, with costs.

Cardozo, Ch. J., Pound, Crane, Andrews, Lehman and O'Brien, JJ., concur.

Judgment affirmed.