**A. M. WEBB & CO., Inc., v. ROBERT P. MILLER CO.**

No. 9127.

Circuit Court of Appeals, Third Circuit.

Argued June 17, 1946.

Decided Oct. 25, 1946.

Rehearing Denied Dec. 9, 1946.

Herbert Spencer Leman, of New York City (Moss & Moss, of Philadelphia, Pa., on the brief), for appellant.

Nathan E. Zelby, of New York City (Samuel E. Bertolet, of Reading, Pa., on the brief), for appellee.

Before BIGGS and O'CONNELL, Circuit Judges, and KALODNER, District Judge.

BIGGS, Circuit Judge.

This is an appeal from the judgment of the District Court for the Eastern District of Pennsylvania dismissing the complaint as setting forth no cause of action. The

correctness of the ruling depends upon whether an enforceable contract is pleaded.

Essentially, the complaint alleges the following. On January 9, 1941 A. M. Webb & Co., Inc., a New York dealer in underwear and sportswear, and Robert P. Miller Co., operator of a Pennsylvania mill, entered into a written "memorandum of agreement" in New York which purported to dispose of the manufacturer's entire output for a period of approximately five years. From January 9, 1941 to November 30, 1944 the manufacturer sold to the dealer 162,427 dozen of its products. For the same period, in violation of the agreement, the manufacturer sold to other purchasers 230,000 dozen of such products. From December 1, 1944 to December 31, 1945, when the agreement expired by its terms, an additional 108,000 dozen of its products ought to have been disposed of pursuant to the agreement. On December 18, 1944, the dealer sued seeking damages for breach of contract and equitable relief.

It is not clear whether the written memorandum, set forth in the margin,[1] is an agreement to sell the manufacturer's entire output to the dealer or whether the intent was that all of the defendant's products be sold by the plaintiff to other purchasers. The complaint describes the dealer's right as being "to sell for or purchase from" the manufacturer all its products. Counsel, however, treat the memorandum as an agreement to sell to the plaintiff. Closer analysis reveals that it embodies an agreement by defendant to sell its entire output to or through the plaintiff.[2] In either interpretation, the initial question is whether the failure to stipulate the price at which the sales were to be made renders the agreement inchoate and unenforceable.

Possessing jurisdiction based on diversity of citizenship and amount, the trial court was bound to apply the Pennsylvania rule of conflict of laws. Klaxon Co. v. Stentor Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Accordingly, the law of the place of contracting governs the agreement's validity. Rumsey v. New York & P. R. Co., 1902, 203 Pa. 579, 53 A. 495; Griffin v. Metal Product Co., 1919, 264 Pa. 254, 107 A. 713; see Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 1945,

---

[1] "Memorandum of agreement between A. M. Webb & Co., Inc. of 93 Worth Street, in the Borough of Manhattan, City and State of New York, hereinafter called Webb, and Robert P. Miller Company, Shoemakersville, Pa., hereinafter called the Mill.

"For value received, it is mutually agreed that the entire products of underwear and sport shirts manufactured by/or for the Mill is to be sold exclusively by Webb who will make such purchases thru a factor as arranged with Webb, and remittances are to be made to the Mill by the factor according to the terms of the factors guarantee to the Mill.

"Webb is to receive a discount of 8½% on all purchases of the above products of the Mill during the term of this agreement.

"Webb is to receive full discount on all orders purchased by them as well as reorders secured by them or sent or given direct to the Mill, during the continuance of this agreement.

"The Mill agrees to deliver on the approximate delivery date, all orders accepted by the Mill.

"Samples are to be supplied by the Mill to Webb and Webb agrees to remit to the Mill for such samples at the agreed upon purchase price, less a house sample discount of 33⅓%.

"Neither the Mill nor Webb shall have the right to assign their interest in this agreement.

"The term of this agreement shall be from January 9, 1941 to December 31, 1945. Thereafter, this agreement shall continue for a similar period, but either party shall have the right to discontinue and terminate this agreement on the 31st day of December of any terminating year upon giving to the other party written notice by registered mail not less than six months prior to the 31st of December of said year.

"In Witness Whereof, the parties hereto have hereunto set their hands and seals on the day and year first above written."

[2] The provision that Webb (the dealer) "will make such purchases thru a factor as arranged with Webb and remittances are to be made to the Mill by the factor according to the terms of the factors guarantee to the Mill" indicates that Webb was to purchase for his own account and for direct sale to others. In any event, the dealer assumed all credit risks and was to assure financing by the factor arrangement.

151 F.2d 784, 789; Texas Motorcoaches v. A.C.F. Motors Co., 3 Cir., 1946, 154 F.2d 91, 93. New York law thus controls.

An agreement to sell goods or services at a price to be agreed upon in the future is uncertain and unenforceable. United Press v. New York Press Co., 1900, 164 N.Y. 406, 58 N.E. 527, 53 L.R.A. 288; Sun Printing & Publishing Ass'n v. Remington Paper & Power Co., 1923, 235 N.Y. 338, 139 N.E. 470; David Taylor 'Co., Inc., v. Fansteel Products Co., Inc., 1932, 234 App.Div. 548, 255 N.Y.S. 270, affirmed 261 N.Y. 514, 185 N.E. 718; Leonard C. Pratt Co. v. Roseman, 1940, 259 App.Div. 534, 20 N.Y.S.2d 10; and see St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 1923, 235 N.Y. 30, 36, 138 N.E. 495. On the other hand, an agreement to sell at current rates may be enforced. See Argus Co. v. Mayor of Albany, 1874, 55 N.Y. 495, 504, 14 Am.R. 296. And, merely because the agreement is silent on the price does not render it uncertain. By implication, the agreement is held to be for a price at "market" or "current rates". This has long been the New York view. See Shields v. Pettie, 1850, 4 N.Y. 122, 125; Konitzky v. Meyer, 1872, 49 N.Y. 571. Section 9(4) of the Uniform Sales Act, N. Y. Personal Property Law, Section 90(4), 40 McKinney's Consolidated Laws of N. Y. § 90(4), provides that where no price is fixed the buyer must pay a "reasonable price". And, this is "a question of fact dependent upon the circumstances of each case".

Furthermore, it is apparent from the New York decisions, that every effort must be made to uphold commercial agreements, even if they are not precise in terms as to price. Only "as a last resort" will they be "thrown out altogether as meaningless futilities". Outlet Embroidery Co. v. Derwent Mills, 1930, 254 N.Y. 179, 183, 172 N.E. 462, 463, 70 A.L.R. 1440 per Cardozo, C. J. Merely because recourse to the market is required to ascertain reasonable price does not devitalize a contract. See Franklin Sugar Refining Co. v. Lipowicz, 1928, 247 N.Y. 465, 473, 160 N.E. 916, 59 A.L.R. 1414; and cf. Moon Motor 'Co. of New York v. Moon Motor Car Co., 2 Cir., 1928, 29 F.2d 3. See also Varney v. Ditmars, 1916, 217 N.Y. 223, 234, 111 N.E. 822, Ann.Cas.1916B, 758 dissent by Cardozo, J.

The practical import of these controlling principles is aptly illustrated by the case before us. Two business men attempt to reach an understanding. All of the manufacturer's output is to be disposed of through the dealer who is to obtain an "8½% discount." One now contends that because a definite price for the products was not named their efforts were fruitless. Yet, the parties must have been well acquainted with the vagaries of the cotton market. Traders know that the cotton market fluctuates widely over even a short period.[3] To enter into a contract calling for the sale of cotton at a fixed price over a period of five years would be more of a gamble than a business transaction. We hesitate to infer that either party here would have attempted it. Moreover, the understanding was entered into at a time of world chaos. Prices were rising in the cotton market. It thus becomes understandable that a stipulated price was omitted and that the reasonable price at the time of any given order (which is normally the market price) should prevail. Cf. Shields v. Pettie, supra; Konitzky v. Meyer, supra; Restatement, Contracts, Sec. 32, Ill. 12.[4]

We find no merit in the defendant's further contention that the agreement fails for want of sufficient memorandum to satisfy the Statute of Frauds, N.Y. Personal Property Law, Sections 31 and 85, 40 McKinney's Consolidated Laws of N.Y. §§ 31 and 85. Here, price was not specified because by its very nature the parties did not intend to fix it. Recourse must be had

---

[3] Cf. Monthly average prices of Middling Upland Cotton at New York, 1935-1944. Source: Cotton Year Book of New York Cotton Exchange, 1944, illustrating the marked variation in cotton prices for any given month during the period.

[4] Irrelevance of the executory nature of the contract is disclosed by reference to Varney v. Ditmars, supra, 217 N. Y. at page 234, 111 N.E. 822, Ann.Cas. 1916B, 758, dissent by Cardozo, J.

to the market to determine price. All of the terms of the contract that were agreed upon were expressed. Implication of a "reasonable price" (market) is by law. Thus, the memorandum was sufficient to satisfy the Statute of Frauds. See Franklin Sugar Refining Co. v. Lipowicz, supra, 247 N.Y. at page 473, 160 N.E. 916, 59 A. L.R. 1414.

Nor are we impressed by the defendant's contention that the agreement lacked mutuality. The writing is a "memorandum of agreement." "The very word 'agreement' connotes a mutual obligation". Moran v. Standard Oil Co. of New York), 1914, 211 N.Y. 187, 197, 105 N. E. 217, 220. Looking at the entire writing it is obvious that the dealer agreed to dispose of the entire output over the five year period just as much as the manufacturer agreed to sell. Once the agreement was executed, Webb had acquired a five year output of underwear and sport shirts from the Miller factory. Miller, simultaneously, had acquired a purchaser or conduit for all its products during the contract's life. This contract may be enforced.

Accordingly we find that a valid cause of action is pleaded. The judgment of the court below will be reversed and the cause will be remanded.

Judge O'CONNELL participated in the consideration and decision of this case but was unable to collaborate in the preparation of the opinion.