**A. M. WEBB & CO., Inc. v. ROBERT P. MILLER CO.**

No. 9739.

United States Court of Appeals Third Circuit.

Argued Feb. 8, 1949.

Decided July 27, 1949.

Herbert Spencer Leman, New York City (Moss & Moss, Philadelphia, Pa., on the brief), for appellant.

Julius Zizmor, New York City (Nathan E. Zelby, New York City, and Samuel E. Bertolet, Reading, Pa., on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

This diversity case is being considered by us for a second time. On the previous appeal, we reinstated the complaint after it had been dismissed in the court below. Our opinion, which includes much of the factual background of the case, is reported at 1946, 157 F.2d 865, and need not be here repeated.[1]

Plaintiff ("Webb"), a middleman, seeks an accounting and damages for breach of contract by defendant ("Miller"), a manufacturer of underwear and sport shirts. It is undisputed (1) that the agents of the parties to this case signed a "memorandum of agreement" on January 9, 1941, in New York, which memorandum committed Miller to sell, for approximately five years, its entire output to or through Webb; and (2) that Miller did thereafter, without concurrence by Webb, sell some of its goods to the government and to another middleman.

If the record before us on appeal is more complicated than is to be expected of a case of this nature, we think that this could have been avoided if the litigants had made their positions sufficiently clear to one another to permit the framing of the precise factual and legal issues. We shall confine ourselves to what we deem the critical issues on this appeal.

One of the defenses asserted by Miller

---

[1] Following our remand of the case and the consequent jury trial discussed in some detail in this opinion, the trial court gave judgment for defendant and denied motions by plaintiff for judgment or a new trial. The district court opinion is reported at D.C.E.D.Pa., 1948, 78 F.Supp. 24.

was that the memorandum of agreement had been cancelled by mutual assent of the parties one or two months after the agreement was made in January, 1941. This defense was not an afterthought inspired by our disposition of the first appeal. It was the sole affirmative defense pleaded by Miller in the original answer, was reiterated in substantially similar language in the first amended answer filed prior to the motion for dismissal of the complaint, and was renewed in the second amended answer which the district court permitted Miller to file after we ruled on the first appeal that the memorandum of agreement was enforceable under New York law. At the jury trial which followed, each of the parties put on the stand two witnesses who testified as to this issue: the president and the attorney of Webb averred that, although negotiations looking toward the drafting and signing of a new agreement were had, on April 9, 1941, the understanding was that the January 1941 agreement was to remain in force until the new agreement was consummated (which never occurred); on the other hand, the treasurer and attorney of Miller stated that each side orally agreed to release the other from the obligations imposed by the January 1941 agreement and to begin negotiations for a new contract without being bound by the previous commitments.

At the close of all the testimony, the trial judge decided to submit several questions to the jury for a special verdict. One of the questions was, "Did the parties at their meeting in April, 1941, agree that the existing contract should be entirely rescinded regardless of whether or not a new contract could be made?" The charge to the jury and supplementary comments of the trial judge, which fully and clearly explained this question, indicate that, had he been the finder of fact, he might well have returned a negative answer, as he apparently deemed it more logical for Webb to want to retain whatever advantage it had gained by the January agreement, rather than to be willing to revert to a status of one merely inviting a contract. In fact, his comments led Miller to make as its first

objection to the charge that the judge had given "a sort of prejudiced viewpoint in your charge, in favor of the plaintiff." The jury, nevertheless, answered this question in the affirmative; i. e., that rescission was effected in April, 1941.

■■■ After careful examination of the record, we cannot say that the jury here reached a capricious result. The jury apparently believed the version related by the witnesses of Miller, whose allegations that Webb had little faith in the enforceability of the January memorandum and that there was more to be gained by beginning negotiations with a clean slate, apparently had weighty effect. There being substantial evidence to support this jury finding, it must be accepted on review. Consequently, since written agreements may be rescinded by later parol agreements, see 1 Restatement, Contracts, 1932 Ed., § 222, we need consider the claim of Webb only as to the three-month period between January and April 9, 1941.

Although Miller has suggested other defenses against being held liable for any breaches of contract committed during that three-month period, only that attacking the enforceability of the January 1941 memorandum need concern us here. This was the question which received most attention at the trial and which has led to confusion.

■■■ As we stated in our previous opinion in this case, 157 F.2d at page 867, New York law does not require that price be specified in a memorandum otherwise satisfying the Statute of Frauds, if the parties intend that a reasonable price shall prevail. See also 1 Williston on Sales 3rd Ed., § 103, page 273, quoted in Franklin Sugar Refining Co. v. Lipowicz, 1928, 247 N.Y. 465, 160 N.E. 916, 59 A.L.R. 1414. Consequently, at the trial on the merits, any testimony as to price arrangements between the parties was to be directed to a determination of whether such basis was one of reasonableness; i. e., whether the parties expected prevailing prices for similar items to be the guide for those adopted for themselves. Thus, Miller could not relitigate the questions settled by us in our

disposition of the first appeal,[2] and was to be limited to proof, if any, that the parties agreed upon some standard other than reasonableness for the prices of the goods to be produced in the future. We have little doubt that such restriction of inquiry would have made it apparent that, as we had stated, there was no necessity for a price provision in the memorandum, and excursions into collateral matters could have been avoided.

■■■ If for some reason it was desirable to obtain an express jury finding on this subject, the single question whether or not the parties, on January 9, 1941, undertook to buy and sell in the future on the basis of what were reasonable prices under conditions of business at the time of each sale would have elicited precisely the information desired. The affirmative answer which the jury did give to the third special question, "When the parties made the contract, was it mutually understood and agreed that the price at which the plaintiffs were to dispose of the entire output of the defendant's mill over the 5 year period was to be fixed from time to time by voluntary agreement between the parties?" might just as well have meant—and, in fact, our reading of the record persuades us that it did so mean—that the jury found that the parties intended in the future, just as they had over a period of years, to arrive at a price on the basis of reasonableness. Cf. Personal Property Law, Consol.Laws, c. 41, § 90, 40 McKinney's Consolidated Laws of New York, which is Section 9 of the Uniform Sales Act. We must follow the principle enunciated in many New York decisions that an interpretation is to be avoided which would make a nullity of a bona fide, arm's-length commercial transaction not contrary to public policy. "If the parties have by any course of dealing made it possible for a reasonable man in their position to understand their intention as to the price, it will be fixed by this understanding based on previous course of dealing as effectually as if stated in words." 1 Williston on Sales, 3rd ed., § 167, page 434. See also Beech Aircraft Corporation v. Ross, 10 Cir., 1946, 155 F.2d 615, 617.

We conclude, therefore, that any breaches of its contract committed by Miller between January 9, 1941, and April 9, 1941, afford a proper basis for the recovery of damages by Webb. Rescission of the contract on the latter date eliminates any question of recovery for sales in violation of the agreement made thereafter. Since the testimony as to damages was directed primarily to the entire period covered by the contract, rather than to these 3 months, probably because of the focussing of attention upon the price issue herein determined, we deem it appropriate under the circumstances that Webb be given the opportunity to establish the damages, if any, it suffered by virtue of contractual breaches during that 3 month period. Accordingly, the judgment of the district court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

---

[2] It is probably unnecessary to add that nothing in the record before us gives us reason to doubt the correctness of the conclusions announced in our opinion holding that a cause of action had been stated.

It is not inapposite to note at this point that the position of Miller at the trial on the merits was based upon a second amended answer which Miller filed after our decision on the first appeal. In the affidavit accompanying the motion to file the second amended answer, the treasurer of Miller stated that the motion had been prompted because this court had "injected a new issue into the case." Webb unsuccessfully opposed in the court below the allowance of the amendment upon the ground that the proposed amendment was not made in good faith and was legally insufficient.