HANN *v.* HOFFMAN ET AL., ADMINISTRATORS ET AL.

[No. 143, September Term, 1957.]

564

*Decided February 28, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Douglas N. Sharretts* for the appellant.

*Walter V. Harrison* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The plaintiff in this case brought an action to recover the sum of $12,484.04 allegedly due by the defendants for goods sold and delivered by the plaintiff during the calendar year 1955. The defendants, pleading tender, paid the sum of $6,902.10 into court, claiming that to be the full amount due. The case was tried by the court without a jury, resulting in a judgment for the amount tendered. The plaintiff appeals.

The appellant, Mrs. Hann, has, since her husband's death about seven years ago, carried on his basket-making business at Franklin, Virginia, under the firm name of Theo. K. Hann & Son. For many years the firm had sold baskets to David Shevitz, who traded as the Market Basket Company, in Baltimore. His business was seasonal, the demand being confined to the summer months, but he purchased and stored baskets throughout the year. He purchased about 28% of the Hann output. Mr. Shevitz died intestate on November 10, 1955, and administrators were appointed. The administrators promptly distributed the assets of the estate to the decedent's widow and daughter, who in turn sold the business, which was the principal asset, to Charles J. Novaska, who had been employed by Mr. Shevitz as bookkeeper for many years. The present claim being a liability of the business, the appellant joined the administrators, the distributees, and the purchaser in her action, contending that there was a failure to comply with the Sales in Bulk Act, Code (1951), Art. 83, sec. 97, *et seq*. No question is raised as to the propriety of the joinder.

Mr. Shevitz and Mr. and Mrs. Hann had been close friends, and their method of doing business was quite informal. Mrs. Hann testified that her firm would deliver baskets f.o.b. Franklin (they were usually hauled in Shevitz's trucks) throughout the year, that there would be payments on account in round sums when requested, but that the price would not actually be set until the end of each year. No prices were quoted on the delivery slips, which contained only a statement of quantities and types of basket. By agreement

between Mrs. Hann and Mr. Shevitz, the account was settled for the year 1954 at the end of that year. Mr. Novaska testified without objection that he was instructed by Mr. Shevitz to figure the 1955 prices, at which the baskets were resold, on the basis of the prices paid Mrs. Hann during 1954, plus the usual mark up, which he described in detail. In December, after Mr. Shevitz's death, Mrs. Hann came to Baltimore and the account was discussed. Mrs. Hann testified that no figures were mentioned. Her concern at that time was about the financial responsibility of Mr. Novaska, if he was to take over the business. On the other hand, Mrs. Shevitz, Mr. Novaska and Mr. Harris testified that the figure of $6,900.00 definitely was mentioned, and that Mrs. Hann raised no question about it at that time. A few weeks later, Mr. Novaska called to see Mrs. Hann in Virginia and left her a detailed statement of the account with unit prices and a computation of the total in the figure mentioned. He testified that she again raised no objection. He asked her to let him pay the balance gradually, as he needed capital to operate the business, but he was not able to offer any security except a life insurance policy. After consulting her lawyer, she declined to extend credit. Thereafter, she filed a claim against the estate for some $10,000.00, the difference being chiefly due to higher unit prices. When suit was filed, the balance claimed was some $12,000.00, due to a further increase in the unit prices charged.

Adopting the quantities contended for by the appellant, which were not seriously contested in the court below, the dispute as to unit prices may be summarized as follows:

| Quantity | Item | Appellant | Appellee |
|---|---|---|---|
| 168,940 | 16-quart peach baskets | 11½¢ | 9¢ |
| 48,790 | 20-quart peach baskets | 13¢ | 11¢ |
| 3,750 | No. 2 peach baskets | 9¢ | 6¢ |
| 200 doz. | 8-quart market baskets | 1.75 doz. | 1.80 doz. |
| 10 doz. | 12-quart market baskets | 2.00 doz. | 1.80 doz. |

It is undisputed that $14,000.00 was paid on account during 1955, in three payments of $1,000.00, four payments of $2,000.00, and one payment of $3,000.00, the last payment being on September 1, 1955.

The appellant's chief contention is that since there was no agreement as to price, either before or subsequent to the deliveries in question, she is entitled to recover the fair market value of the goods. Under the Uniform Sales Act, as codified in Code (1951), Art. 83, sec. 27, it is provided: "(1) The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties. * * * (4) Where the price is not determined in accordance with the foregoing provisions, the buyer must pay a reasonable price. What is a reasonable price is a question of fact dependent on the circumstances of each particular case." In the absence of a course of dealing, a reasonable price would ordinarily be the fair market price, where clearly established. There is no doubt that title may pass, even though no price is fixed, and that recovery may be had in *quantum meruit* on the theory of an implied contract. If there is a contract price, the measure of the recovery would be fixed by that. *Bright v. Ganas,* 171 Md. 493, 497.

In 1 *Williston, Sales* (Rev. ed.), § 167, the learned author states: "Ordinarily, the price either in an executed sale or in a contract to sell is fixed by the parties at the time the bargain is made. It need not be stated in words, however. If the parties have by any course of dealing made it possible for a reasonable man in their position to understand their intention as to the price, it will be fixed by this understanding based on previous course of dealing as effectually as if stated in words." Cf. *A. N. Webb & Co. v. Robert P. Miller Co.,* 176 F. 2d 678 (C. A. 3rd).

The trial court found it possible to determine the intention of the parties as to price from their course of dealing, and rejected the evidence as to market price. Under the unusual circumstances of the case, we cannot find that he was clearly wrong. Mr. Novaska testified that baskets costing 9¢ were sold to the trade for 12¢, figuring 1¢ for delivery and handling, 1¢ for storage and 1¢ profit. This naturally left a small margin for negotiation of cost price at the year's end, for baskets resold during the year. Mrs. Hann was unable to explain how Mr. Shevitz could price and sell the baskets

at a profit, without having a definite idea as to their cost to him. Obviously, an increase as great as that from 9¢ to 11½¢ in the first item stated above, would completely wipe out the estimated 1¢ profit.

Moreover, for the four years previous to the one in question, the amounts paid on account were in each case roughly equal to the amount claimed. The variations can be largely explained by differences in the quantities or claims of defects. For example, it was shown that the item "No. 2 peach baskets" was used to describe those containing some defect, which were culled from the shipments and sold at a lower price. This would obviously require adjustment. In 1951 the balance due the manufacturer was about $1,800.00, in 1952, $900.00, in 1953, $3,400.00. In 1954, there was an overpayment by the buyer of about $1,400.00, which was apparently written off. The smallness of the variations, in relation to the totals, which were in excess of $20,000.00 for the years 1954 and 1955, indicates that there was no major increase in the initial prices, on which Mr. Shevitz necessarily based the prices he quoted to the trade. Mrs. Hann testified that she usually gave him a "break" of about 1¢ below the prices at which she sold to others. There was testimony that there was no standard price in the trade, but that each manufacturer set his own prices, depending upon his own costs and other factors, and that over the years there had been a gradual increase in unit prices, due to increase in labor and material costs. It seems a fair inference that the parties did in fact start off with definite unit prices at the beginning of each year, although subject to minor adjustments at the year's end.

Our conclusion on this point disposes of the appellant's contention that there was no evidence from which a price could be established by a course of dealing, and also disposes of the contention that the court erred in excluding evidence of the prices paid by other customers of Mrs. Hann. If we assume that such evidence would be relevant to establish market value, there is no evidence, as the trial court found, that this factor was controlling, if it played any part at all, in the course of dealing. Nor do we find any reversible error

in the limitation of Mrs. Hann's testimony as to transactions with the decedent. She was permitted without objection to testify generally as to the course of dealing, and the only exclusion was her attempted explanation as to her conversation with the decedent in regard to the write-off of the $1,400.00 balance representing an overpayment of the account by Mr. Shevitz in 1954. The fact of the write-off was clearly established by the records.

We think, however, that the court erred in fixing the amount of judgment in the sum tendered. There is a discrepancy between the quantities of 8-quart market baskets and No. 2 peach baskets claimed by the appellant, and those shown on the appellees' statement. Since the appellees conceded that there was no dispute as to quantities, the sum of $272.40 should be allowed, using the quantities stated by the appellant and the unit prices claimed by the appellees. We also think that the appellant is entitled to allowance for the fact that in 1954 the amount actually paid per unit was augmented by the write-off above mentioned, to the extent of $\frac{3}{4}$ of 1¢ per unit. Thus the unit prices for 1954 were actually higher than those claimed by the appellees. We accept the appellant's calculation, based on the undisputed evidence, that this would result in an increase of $1,681.01, and another undisputed item of $5.74. Accordingly, we shall modify the judgment and direct that it be entered for $8,861.21, and affirm the judgment as modified.

> *Judgment modified and entered for $8,861.21, and affirmed as modified, costs to be paid by the appellant.*